No. 12308

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

BETTY JANE CECIL, ON BEHALF OF HERSELF
AND ALL OTHERS SIMILARLY SITUATED,

Plaintiff and Respondent,

-vs-

ALLIED STORES CORPORATION, a Delaware
Corporation, and "THE PARIS OF MONTANA",
a division of Allied Stores Corporation,

Defendants and Appellants.

---

Appeal from:  District Court of the Eighth Judicial District,
Honorable Paul G. Hatfield, Judge presiding.

Counsel of Record:

For Appellants:

Jardine, Stephenson, Blewett and Weaver, Great Falls,
Montana.
John D. Stephenson argued, Great Falls, Montana.

For Respondent:

Smith, Emmons and Baillie, Great Falls, Montana.
Robert J. Emmons argued and Marvin J. Smith and William
L. Baillie appeared, Great Falls, Montana.

AMICUS CURIAE

Wesley Wertz, argued, Helena, Montana.
Kendrick Smith argued, Butte, Montana.
Edward Alexander argued, Great Falls, Montana.
Cale Crowley appeared, Billings.
A. W. Scribner appeared, Helena, Montana.
Geoffrey Brazier appeared, Helena, Montana.

---

Submitted:  March 26, 1973

Decided: JUL 2 6 1973

Filed: JUL 2 6 1973

_____
Thomas J. Kearney
                          Clerk

PER CURIAM:

This is a class action by a revolving charge account customer against a retail department store seeking a declaratory judgment (1) that the Montana Retail Installment Sales Act is unconstitutional, or in the alternative (2) that the revolving charge account plan of the store violated the Act prior to its amendment in 1971, and (3) that relief should be granted to all revolving charge account customers of the store in the form of refunds of finance charges, punitive damages, attorney's and accountant's fees, interest and costs. The district court of the eighth judicial district, Cascade County, granted summary judgment to the customers; the store appeals.

Plaintiff is Betty Jane Cecil who has had a revolving charge account for several years with a retail department store in Great Falls, The Paris of Montana, one of the defendants. The other defendant is the parent corporation of The Paris, Allied Stores Corporation. Plaintiff has incurred and paid finance charges on her revolving charge account with The Paris for the past several years. Also appearing either by brief, oral argument, or both as Amicus Curiae were: Cale Crowley, Esq. (Montana Retailers Association); Kendrick Smith, Esq. (numerous Montana retail stores); Geoffrey L. Brazier, Esq. (State and local Chambers of Commerce); Edward C. Alexander, (oil companies); A. W. Scribner, Esq. (Montana Automobile Dealers Association); and Wesley W. Wertz, Esq. (Montana Bankers Association).

The Paris has operated its revolving charge account plan since about 1955. Under the plan the customer and The Paris enter into a written agreement covering future retail purchases of merchandise on credit. If the customer does not wish to pay cash for a particular item of merchandise, the sale is recorded for billing purposes subject to the prior revolving charge account agreement.

The purchase is recorded on the customer's account and a monthly statement is mailed to him. Prior to July 1, 1971, the finance charge was imposed upon the balance from the previous monthly billing cycle; since then finance charges have been compiled on the average daily balance in the account during the billing cycle (excluding current purchases and unpaid finance charges). Thus, the customer can avoid payment of any finance charges by paying the unpaid balance of his account within ten days after receipt of the billing following the close of the billing cycle.

If the customer chooses to pay the unpaid balance of his account over a longer period of time, he does so in accordance with the payment schedule in the revolving charge account agreement. The minimum monthly payment under the agreement is ten percent of the unpaid balance, subject to a flat minimum charge of fifty cents per month in any case. In exercising his choice to make installments payments over a longer period of time, the customer agrees to pay a finance charge of one and one-half percent per month (computed on the previous month's unpaid balance prior to July 1, 1971 and computed on the average daily balance in the billing cycle thereafter). All revolving charge account customers of The Paris are subject to this plan. The revolving charge account agreement has been revised from time to time over the years but its essential features have remained unchanged.

The original complaint in this case was filed on January 6, 1971, in the district court of Cascade County. Two months later an amended complaint was filed which forms the basis of this action. Count I alleged the revolving charge account finance charges of The Paris were illegal because those sections of the Montana Retail Installment Sales Act permitting such charges were unconstitutional. Count II presented an alternative theory of recovery: that presuming the Act is constitutional, The Paris nonetheless violated its terms prior to the 1971 amendment in imposing and collecting finance charges on its revolving charge accounts.

Following defendants' answer containing a denial, a variety of other defenses unnecessary to detail herein, and extensive pretrial discovery proceedings, plaintiff filed a motion for summary judgment and a motion seeking determination of whether the case was maintainable as a class action. The district court granted both motions and entered summary judgment for Betty Jane Cecil and all members of her class.

The summary judgment on Count I declares the maximum finance charges contained in the Montana Retail Installment Sales Act (other than those applicable to motor vehicles) unconstitutional on three grounds: (1) Violation of Art. V., Sec. 26, 1889 Montana Constitution, prohibiting special laws regulating interest. (2) Violation of Art. V, Sec. 26, 1889 Montana Constitution, prohibiting grants of special or exclusive privileges, immunities or franchises. (3) Violation of Art. III., Sec. 3, 1889 Montana Constitution, permitting every person to acquire or possess property. The summary judgment on Count I accordingly requires The Paris to refund to all its revolving charge account customers all finance charges collected from January 6, 1966 to date of judgment, less a credit of six percent interest on delinquent accounts during the period of delinquency.

The summary judgment on Court II alternatively declares that The Paris violated sections 74-607 and 74-608, R.C.M. 1947, of the Montana Retail Installment Sales Act, prior to the 1971 amendment, and consequently was barred from charging or receiving any finance charges collected between March 9, 1969 through June 30, 1971, and requires refund of such charges. It held in abeyance, pending appeal, determination of whether revolving charge account customers were entitled to punitive damages. The summary judgment on Count II was expressly made operative only in the event the judgment on Count I was reversed on appeal.

This appeal is from the summary judgment of the district court.

In view of our rulings hereinafter set forth, the controlling issues can be summarized in this fashion: (1) Is the Montana Retail Installment Sales Act unconstitutional? (2) Did the revolving charge account plan of The Paris violate the Act prior to its 1971 amendment? The additional issues assigned for review concern damages, the existence of genuine issues of material fact precluding summary judgment for plaintiff, and the maintenance of this suit as a class action. None of these additional issues are material to our decision herein.

By way of background we note that Montana has a general usury statute prohibiting the charging or receiving of any rate of "interest" exceeding ten percent per year. Section 47-125, R.C.M. 1947. It also has a statute defining interest as "the compensation allowed by law or fixed by the parties for the use, or forbearance, or detention of money." Section 47-122, R.C.M. 1947. Since 1959, Montana has had a Retail Installment Sales Act, section 74-601, et.seq., R.C.M. 1947, containing finance charge limitations for covered retail installment transactions which allows finance charges in excess of the maximum interest rate permitted under the foregoing general usury statute.

The Act generally covers sales of goods and services by retail sellers to retail buyers pursuant to installment trans-actions. It covers in detail the requirements, prohibitions, and contents of such contracts, imposes ceilings on finance and service charges, and provides the method of computation of finance charges. The ceilings on automobiles vary according to the age of the auto-mobile from $7 per $100 per year for new cars to $11 per $100 per year on used cars over two years old. The ceilings on other goods and services vary according to the principal balance owed: on that portion of the principal balance owed up to $300 at the rate of $11 per $100 per year; on that portion of the principal balance owed from $300 to $1,000 at the rate of $9 per $100 per year; and on that portion of the principal balance owed exceeding $1,000 at the rate of $7 per $100 per year. The Act also provides for a

system of licensing and regulation of sales finance companies engaged in the business of purchasing retail installment contracts from retail sellers. Civil and criminal penalties are provided for violations of the Act. The Act was amended effective July 1, 1971 to expressly cover revolving charge account transactions and to prohibit finance charges thereon exceeding one and one-half percent per month.

Plaintiff's constitutional attack is directed against the finance charges authorized in section 74-608 of the Act, both before and after the 1971 amendment. Plaintiff's contentions are threefold: (1) The finance charges violate that part of Art. V., Sec. 26, 1889 Montana Constitution, prohibiting enactment of local or special laws "regulating the rate of interest on money"; (2) the finance charges violate that part of Art. V., Sec. 26, 1889 Montana Constitution, prohibiting enactment of local or special laws granting "any special or exclusive privilege, immunity or franchise"; and (3) the finance charges violate that part of Art. III., Sec. 3, 1889 Montana Constitution, permitting all persons to acquire and possess property.

The district court held the finance charges contained in the Act unconstitutional on each of the above grounds, summarizing its rationale in this language:

> "* * * My conclusion on the constitutional questions
> is based principally on the conclusion the interest
> rates granted by Sec. 74-608, supra, are special in-
> terest rates. From this conclusion flows the conclusion
> the special interest rates are a special privilege or
> franchise to retail sellers or banks resulting in their
> being immune from the general usury law penalties. As
> a result of this special privilege, franchise and immunity,
> all other citizens of Montana are prohibited from acquiring
> property, i.e. money, by charging such rates. If they
> were to do so, and were not within the privileged class of
> retail sellers and banks issuing credit cards, they would
> be subject to the usury penalties of this state."

It is thus apparent the district court's ruling that the Act is unconstitutional rests on a dual foundation (1) that the finance charges authorized by the Act constitute interest, and (2) that the Act is a special law.

We hold that the finance charges permitted by the Act are time price differentials included in the price of goods purchased on credit and payable in installments, and as such are not subject to constitutional or statutory limitations on interest rates. The time price doctrine exempting bona fide sales from maximum interest rates has been firmly embedded in the common law of England since the eighteenth century. Floyer v. Edwards, (K.B. 1774), 98 Eng. Rep. 995; Beete v. Bidgood, (K.B. 1827), 108 Eng. Rep. 792. It has likewise been a firmly established rule of law throughout most of the United States for over 100 years, the United States Supreme Court having recognized it in 1861 in the leading case of Hogg v. Ruffner, 66 U.S. 115, 17 L ed 38. It is considered the established general rule by some text authorities, 45 Am Jur 2d, Interest & Usury, § 123; a recognized principle of law by others, 91 C.J.S. Usury, § 18(b); and an exception to usury prohibitions because there is no loan of money by Restatement of the Law of Contracts, § 526, Illustration 4. Perhaps the best summary statement of the time price doctrine is found in the following statement from 6 Williston, Contracts, § 1685, (Rev.Ed. 1938):

> "The statute of Anne applied only to a loan or forbearance of money, and in the construction of this statute it was held that where property was sold, even though the contract provided in terms for the payment of a fixed price payable in the future with interest at a greater rate than that allowed by the statute, the transaction was, nevertheless, not usurious since everything the buyer promised must be deemed consideration for the sale of property, not interest on a loan or forbearance of money. In the United States like statutes have been similarly construed, so that where property is sold the parties may agree that the price, if paid after a certain time, shall be a sum greater by more than legal interest than the price payable at an earlier day; and though the difference between an agreed price for cash and that for credit is in terms stated in the form of interest at greater than the legal rate, the contract is not usurious."

In most jurisdictions in the United States a time price sale is beyond the ambit of usury limitations simply because interest is not involved and the usury laws apply to loans and not to sales.

For recent examples see: Maine Merchants Association, Inc. v. Campbell (Maine 1972), 287 A.2d 430; Sliger v. R. H. Macy & Co., (1971) 59 N.J. 465, 283 A.2d 904; Zachary v. R. H. Macy & Co., Inc., (1972), 31 N.Y.2d 443, 340 N.Y.S.2d 908; Dennis v. Sears, Roebuck & Co., (1969) 223 Tenn. 415, 446 S.W.2d 260; Mandelino v. Fribourg, (1968) 23 N.Y.2d 145, 242 N.E.2d 823; Steffenauer v. Mytelka & Rose, Inc., (1965) 87 N.J.Super. 506, 210 A.2d 88, Aff'd 1966 46 N.J. 299, 216 A.2d 585; Manufacturer's Advertising Inc. v. Pancoast, (1967) 4 Conn. Cir. 668, 238 A.2d 810; Equipment Finance Inc. v. Grannas, (1966) 207 Pa.Super 363, 218 A.2d 81; Lundstrom v. Radio Corporation of America, (1965) 17 Utah 2d 114, 405 P.2d 339; Smith v. Sherwood & Roberts, Spokane Inc., (1968) 92 Idaho 248, 441 P.2d 158; Theodore Roosevelt Agency v. General Motors Acc. Corp., (1965) 156 Colo. 237, 398 P.2d 965; Howell v. Mid-State Homes, Inc., (1970) 13 Ariz.App. 371, 476 P.2d 892; 14 ALR3d 1077; Kass v. Garfinckel, (D.C. 1973), 299 A.2d 542; Standard Oil Company v. Williams, (Ind. App. 1972), 288 N.E.2d 170.

However, the courts of a few states, while recognizing the time price doctrine, have held that finance charges authorized in installment sales acts are not bona fide time price differentials but are in fact interest and subject to limitations in the usury laws. Elder v. Doerr, (1963), 175 Neb. 483, 122 N.W.2d 528; Lloyd v. Gutgsell, (1963), 175 Neb. 775, 124 N.W.2d 198; State v. J.C. Penney Co., (1970) 48 Wisc 2d 125, 179 N.W.2d 641; Rollinger v. J.C. Penney Company, (S.Dak. 1971), 192 N.W.2d 699.

The reasoning behind these minority holdings is that finance charges in installment sales acts are charges for the forbearance of money which falls within statutory definitions of interest; that installment sales acts containing finance charges based on a percentage or ratio of the unpaid balance do not qualify as true time price sales; and that finance charges authorized under installment sales acts are simply a device to evade usury laws.

Directing our attention to the Montana Retail Installment Sales

Act and The Paris revolving charge account plan, we note the district court held that the Act was not a codification of the time price doctrine; that the finance charges authorized by the Act were compensation for the "forbearance of money" within the statutory definition of interest found in section 47-122, R.C.M. 1947; and that the revolving charge account plan of The Paris was simply too great a departure from established concepts of a time price sale to be brought within the exemption. The district court's holding was based principally on the cases listed in the preceding paragraph, the pertinent constitutional and statutory provisions of the 1889 Montana Constitution, and these additional authorities: Ulvilden v. Sorken, 58 S.D. 466, 237 N.W. 565; Sloan v. Sears, Roebuck and Co., 228 Ark. 464, 308 S.W.2d 802; Stanton v. Mattson, 175 Neb. 767, 123 N.W.2d 844. We have read and considered these authorities but remain unimpressed.

In our view, the Montana Retail Installment Sales Act is a codification of the time price doctrine. Section 74-602, R.C.M. 1947, as originally enacted contained these definitions:

"(g) 'Retail installment contract' or 'contract' means an agreement evidencing a retail installment transaction entered into in this state pursuant to which a buyer promises to pay in one or more deferred installments the time sale price of goods and/or services. * * *"

"(k) 'Finance charge' means the amount, as limited by section 74-608, in addition to the principal balance, agreed upon between the buyer and the seller, to be paid by the buyer for the privilege of purchasing goods or services to be paid for by the buyer in one or more deferred installments.

"(l) 'Time sale price' means the total of the cash sale price of the goods or services and the amount, if any, included for insurance and other benefits if a separate identified charge is made therefor and the amounts of the official fees and the finance charge." (Emphasis supplied)

These definitions were carried forward after the 1971 amendments which specifically pertain to retail charge account agreements indicating legislative recognition that finance charges upon retail charge accounts are time price differentials. Section 74-607(j) of both the original and amended Act provides that

when the buyer defaults in the payment of an installment of the time sale price, the buyer is subject to either a deficiency charge or <u>interest</u> upon such defaulted installment. This interest is a charge for forbearance of money and is payable in addition to the finance charges in the Act. Thus the legislature has distinguished between interest charges for the forbearance of money after default and finance charges included in the time sale price.

The finance charges in the Act are not compensation for the forbearance of money within the statutory definition of interest in section 47-122, R.C.M. 1947. Forbearance is the act by which a creditor waits for payment of a debt due him <u>after it becomes due.</u> Black's Law Dictionary, 4th Ed., or as put by the court in Hafer v. Spaeth, 22 Wash.2d 378, 156 P.2d 408, 411:

> "The term 'forbearance' as used in the law of
> usury, signifies a contractual obligation of
> lender or creditor to refrain, during a given
> period of time, from requiring the borrower or
> debtor to pay a loan or debt <u>then due and payable.</u>"
> (Emphasis supplied)

Where a customer purchases goods under a revolving charge account such as The Paris plan, the debt created by the purchase is a time obligation and is not then due because of the express provisions of the revolving charge account agreement which allows the customer to pay for the purchase in installments over a period of time.

To hold that sales under revolving charge account plans do not qualify as true time price sales is to subordinate substance to form. While it is true that traditionally time price sales included "closed end" transactions wherein one or more articles were sold at the same time under one contract in which the charge for credit was merged in the sale price which was stated as a time price, the substance of a time price sale is simply a credit price repayable in installments. We perceive no logic in denying application of the time price doctrine to revolving charge account sales simply because they are governed by the terms of one price

agreement covering all future purchases from time to time rather than a series of identical individual agreements entered into at the time of each individual sale.

For the foregoing reasons we hold that the finance charges in the Montana Retail Installment Sales Act are not interest but are time price differentials and accordingly the Act is not legislation "regulating the rate of interest on money" proscribed by Art. V., Sec. 26, 1889 Montana Constitution.

Nor is it a special law within the same constitutional prohibition. It is clear that reasonable classifications and distinctions in legislative enactments which operate equally upon every person or thing in a given class are constitutionally permissible and do not violate the constitutional prohibition against special laws found in Art. V., Sec. 26, 1889 Montana Constitition. State ex rel. Hammond v. Hager, ____Mont.____, 503 P.2d 52, 29 St.Rep. 945 (upholding constitutionality of exclusion of agricultural works from the Workmen's Compensation Act); Calvert v. City of Great Falls, 154 Mont. 213, 462 P.2d 182 (upholding constitutionality of exemptions of land used for specific enterprises from compulsory annexation statute); Great Falls National Bank v. McCormick, 152 Mont. 319, 448 P.2d 991 (upholding constitutionality of Small Tract Financing Act applicable only to tracts of land less than three acres); Montana Meat Co. v. Missoula Livestock Auction Co., 125 Mont. 66, 230 P.2d 955 (upholding constitutionality of statute exempting livestock auctioneers from liability for conversion of mortgaged livestock); Rutherford v. City of Great Falls, 107 Mont. 512, 86 P.2d 656 (upholding constitutionality of statute for construction of housing for "low income persons"). It is equally clear from the foregoing cases that legislative classifications carry a presumption of constitutionality which can only be overcome by an affirmative showing that there is no valid reason or basis for singling out a particular class or thing for different legislative treatment.

Here the legislature has singled out a particular class of persons, i.e. retail sellers who sell to retail buyers, and a particular subject matter, i.e. installment sales of personal property under written contract, for special legislative treatment. The legislature has subjected these persons and transactions to special regulatory measures and has established ceilings on finance and service charges.

Is there a reasonable basis for this classification and different treatment? Clearly there is. In economic terms, the cost of extending consumer credit is substantially higher than extending wholesale credit to a few business firms, for example. The sheer volume of consumer credit accounts entails substantially higher costs in servicing such accounts. For more detailed treatment of the economic basis for differentiation see: 63 Harvard Law Review, Regulation of Retail Installment Sales , 877, 878; Consumer Installment Credit, Federal Reserve System 1957, Vol. 1, part 1; Economic Characterization of Department Store Credit, National Retail Merchants Ass'n 1969.

The remaining constitutional objections to the Act can be dealt with summarily. The district court concluded that the Act is a special law granting "special or exclusive privileges, immunities or franchises" within the prohibitions of Art. V., Sec. 26, 1889 Constitution of Montana, and that the Act interferes with the right of non-retail sellers to "acquire property" guaranteed by Art. III., Sec. 3, 1889 Montana Constitution, because they are allegedly denied the right to charge the same finance charge rates as retail sellers. These alleged violations both depend on whether the legislative classifications in the Act are constitutionally permissible. Having found the classification reasonable and constitutionally permissible for the reasons heretofore set forth, the Act is not a "special" law and the constitutional attack must fail.

For the foregoing reasons we hold that the Montana Retail Installment Sales Act, both before and after its amendment in 1971, is constitutional and the district court's holding to the contrary must be set aside.

Directing our attention to the second issue for review, plaintiff contends that the Montana Retail Installment Sales Act preempted the field of all installment sales and as the revolving charge account plan of The Paris did not comply with its provisions prior to the 1971 amendment, The Paris was not authorized to charge and receive the finance charges it did.

Initially it is clear that revolving charge account sales could not and did not comply with the requirements of the Act prior to its amendment in 1971. Section 74-608(b) of the original Act required the finance charge to be computed from the date of installment purchase until maturity; in revolving credit sales finance charges cannot be precomputed. Section 74-607(f) required the finance charge to be stated in dollars and cents; in revolving credit sales this is impossible because such charges cannot be precomputed. Section 74-608(b) required computing of the finance charge from date of sale to maturity; revolving charge accounts compute the finance charges on a monthly basis and add them to the balance before installment payments are credited to the account. Section 74-607 required the installment contract to contain eight specific elements showing computation of the cash price, down payment, amount of finance charge, total time balance and other items, most of which have no application to revolving charge accounts.

But does this mean that The Paris violated the Act prior to the 1971 amendment? Not at all. Contrary to the viewpoint of plaintiff, the Act is a regulatory measure on finance charges and not a statute conferring special benefits in the form of high finance charges for the privileged few falling within its provisions. The Act prior to amendment simply did not attempt or

purport to regulate revolving charge account sales or the finance charges thereon. It simply regulated "closed end" retail installment contracts such as conditional sales contracts, chattel mortgages, bailments or leases with option to purchase and the like. This is clear from the provisions of section 74-602, defining retail installment transactions, retail installment contracts, retail buyers, and retail sellers. Subsections (d), (e), (f), and (g), section 74-602. There is nothing in the Act, prior to its amendment, which purports to regulate or prohibit sales under revolving charge accounts or the finance charges on such sales.

Finance charges on revolving charge account sales were simply unregulated prior to 1971. Limitations on interest rates under the general usury statute did not apply because of the time price doctrine codified in the Act. The legislature, viewing this situation in 1971, amended the Act specifically to cover revolving charge account sales and regulate the maximum permissible finance charges thereon. Chapter 416, Session Laws 1971. The 1971 amendment maintains a distinction between retail installment contracts covered prior to the amendment, and retail charge/account agreements specifically included for the first time in the 1971 amendment. Different finance charge rate structures are presented for each, section 74-608(a),(b), and (c) for retail installment contracts; section 74-608(d) and (e) for retail charge account agreements.

The formal contract provisions required by section 74-607 and the provisions relating to sales finance companies, sections 74-603 and 74-604, apply only to retail installment contracts and do not affect retail charge account agreements. The legislature, at least, did not consider that revolving charge account sales and the finance charges permissible thereon to have been covered by the Act prior to 1971. We concur in this assessment of the situation.

We hold that The Paris did not violate the Montana Retail

Installment Sales Act prior to the 1971 amendment by reason of its revolving charge account operation and the finance charges imposed and received.

The judgment of the district court is reversed and plaintiff's complaint is dismissed.