No. 91-070

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

L. E. SCARR a/k/a
ROBERT SCARR,

        Plaintiff and Appellant,

v.

JAMES W. BOYER
and JOANN BOYER,

        Defendants and Respondents.

FILED

OCT - 8 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        J. Reuss, Wright, Tolliver & Guthals,
        Billings, Montana

    For Respondents:

        James P. Healow, Sweeney & Healow,
        Billings, Montana

Submitted on Briefs: June 13, 1991

Decided: October 8, 1991

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

L.E. Scarr sued James and JoAnn Boyer to recover $70,000 due under a promissory note. The Boyers filed a counterclaim alleging usury. Both parties moved for summary judgment. The District Court for the Thirteenth Judicial District in Yellowstone County granted summary judgment for Scarr on the note itself and granted summary judgment for the Boyers on their counterclaim for usury. Scarr appeals from the order of the District Court. We affirm.

The issues are:

1. Did the District Court err in applying the usury penalty to a contractual provision for post-default interest?

2. Did the District Court err in applying the usury penalty to a contract in which the creditor did not intend to circumvent the usury statute?

In August 1983, Scarr sold subdivided land in Billings to Rim Creek Investors, a partnership that included defendant James Boyer. Scarr was given a mortgage on the property in the amount of $412,500. The partnership agreed to make annual interest payments. The balance of all remaining principal and interest was due on December 5, 1988. A dispute about foreclosure arose as the date of the balloon payment approached. By that time $375,000 of principal remained due. James Boyer and another partner went to Scarr's residence in Washington and negotiated a compromise agreement.

2

Under the terms of this compromise, Scarr forgave $175,000 of principal in exchange for a $50,000 cash payment from the partnership and promissory notes from the individual partners for the remaining $150,000 of principal. The District Court treated this compromise agreement as a novation that cancelled the earlier mortgage, and neither party appeals from that determination.

The Boyers' individual share of the new principal debt was $70,000. They executed a note for that amount and agreed to pay interest at the rate of 10 percent prior to any default. The note provided that in the event of default, the interest rate would increase to 18 percent.

None of the partners made the first semi-annual interest payment when it was due on April 25, 1989. Scarr told the partnership he would accelerate the notes if he did not receive the first semi-annual interest payment by May 15, 1989. On May 11, 1989, the partnership tendered a check drawn on the partnership account for approximately one-half of the total amount of all the semi-annual interest due from all of the partners. Scarr returned this check and said he preferred to have payment from the partners as individuals.

On May 19, 1989, Scarr accelerated the notes and filed suit against the individual partners. His complaint against the Boyers demanded all of the principal, plus 10 percent interest up to April 25, 1989, and 18 percent interest from that date forward. Specifically, Scarr demanded interest of $37.3687 for every day

3

that elapsed after April 25, 1989. In their counterclaim the Boyers alleged that the post-default interest rate of 18 percent was usurious.

Both parties moved for summary judgment. The District Court granted summary judgment for Scarr on the note itself, but also granted summary judgment for the Boyers on their counterclaim. The penalty for usury is twice the amount of the usurious interest charges. Section 31-1-108, MCA. Five hundred and fourteen days elapsed between April 25, 1989, and the date during pre-trial proceedings when Scarr finally abandoned his claim to 18 percent interest. Pursuant to the statute, the District Court doubled the usurious post-default interest sought by Scarr and subtracted it from the $70,000 principal and $4,737.46 in non-usurious pre-default interest. Thus, the court reduced Scarr's recovery by $38,415.02. He appeals.

I

Did the District Court err in applying the usury penalty to a contractual provision for post-default interest?

In Montana, interest is "the compensation allowed by law or fixed by the parties for the use or forbearance or detention of money." Section 31-1-104, MCA. Non-regulated lenders cannot charge more than six percentage points above the New York prime rate as reported in the Wall Street Journal three business days before the transaction in question. Section 31-1-107, MCA.

4

Usury is "[t]he taking, receiving, reserving, or charging" of an interest rate greater than the limit set by § 31-1-107, MCA. Section 31-1-108, MCA. The New York prime rate was 10.5 percent three days before the Boyers signed their promissory note. Thus, the maximum allowable interest rate applicable to the Boyer note was 16.5 percent.

However, Scarr argues that we should not apply the usury statute to the 18 percent post-default interest rate because it is merely a late-payment penalty that the Boyers could have avoided by paying on time. He cites the cases collected in 28 A.L.R.3d 449 for the proposition that post-default interest is not subject to usury statutes. In *Metro Hauling, Inc. v. Daffern* (1986), 44 Wash. App. 719, 722, 723 P.2d 32, 33, for example, the court said:

> [A] provision in a note by which the debtor agrees to pay, after maturity, interest at a rate higher than that allowed by law, does not render the transaction usurious provided the parties acted in good faith and did not intend to evade the usury law. The debtor has it within his power to avoid the additional interest charge by prompt payment of his obligation, and therefore, the contingency upon which the excessive interest comes into existence is not solely within the lender's control. [Citation omitted.]

Scarr assures us that this is by far the majority rule. But in Washington, the usury statutes apply to "every loan or forbearance of money." Wash. Rev. Code § 19.52.010. Montana, by contrast, makes its usury statutes applicable to *"detentions"* of money as well as loans and forbearances. Section 31-1-104, MCA. We find this difference significant.

In *Parks v. Lubbock* (1899), 92 Tex. 635, 51 S.W. 322, the court construed a statute that was virtually identical to Montana's present statutory definition of interest. The court held that:

> The detention of money arises in a case when a debt *has become due*, and the debtor withholds its payment, without a new contract giving him a right to do so. . . . [T]he conclusion is not to be resisted that there was a purpose in adding the word "detention" to the accepted definition of "interest," and that this purpose was to meet the case when the debtor should detain the money owed beyond the stipulated period of forbearance, and so to provide that *a promise to pay an additional sum for such detention should be deemed interest*, and not merely damages by way of a penalty to secure a prompt performance of the contract. [Emphasis added.]

*Parks*, 51 S.W. at 323. The court concluded that the post-default interest at issue in that case was subject to the usury statutes.

The Supreme Court of South Dakota reached the same conclusion in *Ulvilden v. Sorken* (1931), 58 S.D. 466, 237 N.W. 565. The statutory definition of interest in South Dakota, like the statutes in Texas and Montana, covered the "detention of money." The court cited *Parks* with approval and added that:

> Requiring the maker of a note to pay a higher rate of interest after maturity for the use of money is likely to be as oppressive as when required to pay a higher rate during the term of the loan. It may not be within the power of the borrower promptly to meet his obligations at maturity. If a borrower is to be protected from the extortion of an excessive rate for the use of money, there is no apparent reason why it should be limited to the term of the loan.

*Ulvilden*, 237 N.W. at 566.

6

We agree. Usury statutes protect borrowers who lack real bargaining power against overreaching by creditors. *Daffern*, 723 P.2d at 34. The occurrence of a default in no way affects this public policy in favor of protecting the debtor. Indeed, it is after default that the debtor has the greatest need for protection; a debtor who cannot retire a debt compounded by legal interest certainly lacks the resources to pay usurious interest.

For these reasons we adopt the reasoning of the Texas and South Dakota courts and hold that Montana's statutory definition of interest includes post-default interest. Scarr charged the Boyers post-default interest in excess of Montana's statutory limit. This was usury. We conclude that the District Court was correct in applying the usury penalty.

## II

Did the District Court err in applying the usury penalty to a contract in which the creditor did not intend to circumvent the usury statute?

Scarr argues that it would be inequitable to penalize him for usury because he did not intend to violate the usury statute. He admits that it was his idea to charge 18 percent, but asserts that he only wanted to charge as much interest as the law would allow. He says he did not know what the usury limit was in Montana and that not even the partnership or its attorney realized that the post-default interest provision was usurious.

7

We disagree. The only intent required for usury is the intent to charge a particular rate of interest that is usurious in fact. *Montana National Bank of Bozeman v. Kolokotrones* (1975), 167 Mont. 92, 535 P.2d 1017. The creditor need not know that the particular interest rate is usurious and illegal. Thus, whether Scarr intended to violate the law is irrelevant. It is enough that he intended to charge 18 percent. We hold that the District Court was correct in penalizing Scarr for usury despite his assertions that he did not intend to violate the law.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8

October 8, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

J. Reuss, Esq.
WRIGHT, TOLLIVER & GUTHALS
P.O. Box 1977
Billings, MT 59103

James P. Healow, Esq.
SWEENEY & HEALOW
1250-15th St. W., Suite 202
Billings, MT 59102

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy