In re James BRUMMER, a/k/a Brummer Ent., Inc., MPI, Inc., MPI Lumber Millwork, Man–U–Pak, Debtor.

James G. BRUMMER, Plaintiff,

v.

TMG LIFE INSURANCE COMPANY, INC., f/k/a Association Life Insurance Co., Inc., Defendant.

Bankruptcy No. 92–40026–11.
Adv. No. 92/00075.

United States Bankruptcy Court,
D. Montana.

Oct. 28, 1992.

James A. Patten, Billings, Mont., Gary S. Deschenes, Great Falls, Mont., for plaintiff.

Tracey R. Lindberg, John C. Thomas, Minneapolis, Minn., for TMG Life Ins. Co., Inc.

### ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this adversary proceeding, the Plaintiff/Debtor seeks a determination that the Defendant TMG Life Insurance Co. (TMG) claimed usurious interest on its loan after default. TMG, by answer, denied the material allegations of the Complaint, and issue having been joined, trial was held on September 23, 1992, with James A. Patten and Gary S. Deschenes representing the Plaintiff and Tracey R. Lindberg and John C. Thomas representing TMG. Also heard was the Debtor's objection to TMG's Proof of Claim, based on the same usury claim, that TMG is not the proper holder of the note, and TMG caused the loss of sale of the Helena building resulting in damage to the Debtor as an offset against the claim. No evidence by the Debtor was offered on the latter two issues. The parties have submitted memoranda in support of their respective positions and the matter is ready for decision.

In the pre-trial Order filed in this case, the following are the Agreed Facts:

1. The prime interest rate published in the Wall Street Journal edition three days preceding the execution of Plaintiff's note to Defendant was 10.5%.

2. As of January 7, 1992, the principal balance of Plaintiff's note to Defendant was $873,024.88.

3. As of January 7, 1992, the accrued unpaid interest on Plaintiff's note to Defendant was $90,662.64.

4. As of January 7, 1992, the reinvestment premium upon Plaintiff's note to Defendant was $52,381.49.

5. Effective January 7, 1992, there was the sum of $10,480.93 applied to accrued interest.

6. As of January 7, 1992, there was the outstanding sum of $5,408.52 in the late fees.

7. Effective January 7, 1992, the sum of $19,466.85 was applied to default interest.

8. Plaintiff agrees that if the Reinvestment Premium is not interest, the note cannot be determined to be usurious.

9. Plaintiff agrees that if the applicable time period is other than November 2, 1990 through January 7, 1992, the note cannot be usurious.

10. Plaintiff agrees that if monthly compounding is appropriate, the note is not usurious.

The facts show that TMG's predecessor in interest made a mortgage loan to Brummer on December 21, 1989. Brummer executed a promissory note in the amount of $880,000, providing for monthly payments of $8,238.80, with a balloon payment due January 2, 2000. The monthly payment was computed based on an amortization period of 25 years. The note is secured by a Trust Indenture and Security Agreement, together with Assignment of Rents and Leases, in a rental property known as the Professional Plaza, in Helena, Montana. Brummer made timely payments on the note until November 1, 1990, when the note went into default. Following default, TMG filed a state court foreclosure action. On the eve of the foreclosure sale, January 7, 1992, Brummer filed a Chapter 11 Bank-

ruptcy Petition. Thereafter, Brummer filed this adversary proceeding alleging the amount claimed under the note violated Mont.Code Ann. § 31–1–107.

The promissory note (Exhibit 1) provides for interest at the rate of 10.375% for the first five years of the loan, after which the rate of interest would be modified. The note contains three other provisions pertinent to the issues in this case. First, the note provides that in the event of prepayment prior to maturity "provided no default or event of default exists", a prepayment "premium", under a complicated formula, is due. Second, and critical to this case, is a provision providing—

> If a Default occurs hereunder and this note is accelerated, a tender of payment of the amount necessary to satisfy the accelerated amount must be accompanied by a reinvestment premium of six percent (6%) of the accelerated amount paid to compensate the holder for the loss of its investment and the risk of reinvestment ("Reinvestment Premium") and such payment must therefore include such Reinvestment Premium.

Third, the note also provides that if default occurs, the holder, at its option, during the period of default may charge a "default rate" of interest of two percent interest per annum in addition to the interest rate in effect on the note. In this case, the default rate of interest would be 12.375%, an amount which is not usurious under Montana law.

TMG's Proof of Claim filed in this Chapter 11 case, totals $1,014,169.03, consisting of the following:

| | |
|---|---|
| Principal | $873,024.88 |
| Interest | $ 90,662.64 |
| Default Interest | $ –0– |
| Late Charge | $ –0– |
| Reinvestment Premium | $ 50,481.51 |
| Attorney fees | $ –0– |

The parties now agree the reinvestment premium due is $52,381.49, a payment of $10,480.93 was applied to interest effective January 7, 1992, late fees total $5,408.52 and effective January 7, 1992, a payment of $19,466.85 was applied to default interest. Through this maze of figures, the Plaintiff calculates the TMG claim at $1,051,425.31, and presented testimony that, based on simple interest calculations, TMG's claim at 16.5% (the legal rate) could not exceed $1,040,008, or if compounded annually could not exceed $1,045,645. The calculation of the claim was made from the period of November 2, 1990, the date of default, to January 7, 1992, the bankruptcy petition date.

Jurisdiction of this Court has been conceded by the parties under 28 U.S.C. §§ 1334 and 157(b)(2)(C). This dispute concerns an allowance of the Proof of Claim of TMG and is thus a core proceeding under § 157(b)(2)(C). *Langenkamp v. Culp*, 498 U.S. 42, ——, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990).

The applicable Montana interest and usury statutes provide in Mont.Code Ann.:

**31–1–104. Interest defined.** Interest is the compensation allowed by law or fixed by the parties for the use of forbearance or detention of money.

**31–1–107. Interest rate allowed by agreement.**

(1) Parties may agree in writing for the payment of any rate of interest not more than 6 percentage points per annum above the prime rate of major New York banks as published in the Wall Street Journal edition date 3 business days prior to the execution of the agreement, and such interest shall be allowed according to the terms of the agreement.

(2) A loan that is not usurious when made is lawful for the duration of the loan, provided the loan agreement is not substantially changed. This subsection does not apply to loan renewals.

(3) The provisions of this section do not apply to regulated lenders as defined in 31–1–111.

**31–1–108. Penalty for usury—action to recover excessive interest.**

(1) The taking, receiving, reserving, or charging a rate of interest greater than is allowed by 31–1–107 shall be deemed a forfeiture of a sum double the amount of interest which the note, bill, or other evidence of debt carries or which has been agreed to be paid thereon.

(2) When a greater rate of interest has been paid, the person by whom it has been paid, his heirs, assigns, executors, or administrators may recover from the person, firm, or corporation taking, receiving, reserving, or charging same a sum double the amount of interest so paid, provided that such action shall be brought within 2 years after the payment of said interest, and provided that, before any suit may be brought to recover such usurious interest, the party bringing suit must make written demand for return of said interest so paid.

The latest Montana Supreme Court decision on usury is *Scarr v. Boyer,* 250 Mont. 248, 818 P.2d 381, 48 St.Rep. 910 (1991) which holds post-default interest (delay interest) is subject to Montana usury statutes because it involves a "detention" of money and is not in the nature of a penalty which could be avoided by the borrower's timely payment. *Scarr* explains:

> In *Parks v. Lubbock* (1899), 92 Tex. 635, 51 S.W. 322, the court construed a statute that was virtually identical to Montana's present statutory definition of interest. The court held that:
>
>> The detention of money arises in a case when a debt *has become due,* and the debtor withholds its payment, without a new contract giving him a right to do so.... [T]he conclusion is not to be resisted that there was a purpose in adding the word "detention" to the accepted definition when the debtor should detain the money owed beyond the stipulated period of forbearance, and so to provide that *a promise to pay an additional sum for such detention should be deemed interest,* and not merely damages by way of a penalty to secure a prompt performance of the contract. [Emphasis added.]
>
> *Parks,* 51 S.W. at 323. The court concluded that the post-default interest at issue in that case was subject to the usury statutes.
>
> The Supreme Court of South Dakota reached the same conclusion in *Ulvilden v. Sorken* (1931), 58 S.D. 466, 237 N.W. 565. The statutory definition of interest

in South Dakota, like the statutes in Texas and Montana, covered the "detention of money." The court cited *Parks* with approval and added that:

>> Requiring the maker of a note to pay a higher rate of interest after maturity for the use of money is likely to be as oppressive as when required to pay a higher rate during the term of the loan. It may not be within the power of the borrower promptly to meet his obligations at maturity. If a borrower is to be protected from the extortion of an excessive rate for the use of money, there is no apparent reason why it should be limited to the term of the loan.
>
> *Ulvilden,* 237 N.W. at 566.
>
> We agree. Usury statutes protect borrowers who lack real bargaining power against overreaching by creditors. [*Metro Hauling, Inc. v.*] *Daffern,* [ (1986) ] 723 P.2d [32] at 34. The occurrence of a default in no way affects this public policy in favor of protecting the debtor. Indeed, it is after default that the debtor has the greatest need for protection; a debtor who cannot retire a debt compounded by legal interest certainly lacks the resources to pay usurious interest.
>
> For these reasons we adopt the reasoning of the Texas and South Dakota courts and hold that Montana's statutory definition of interest includes post-default interest. Scarr charged the Boyers post-default interest in excess of Montana's statutory limit. This was usury. We conclude that the District Court was correct in applying the usury penalty. *Id.* 818 P.2d at 383.

As a federal Court, I am bound to follow an interpretation of state law by the highest state court. *Aydin Corp. v. Loral Corp.,* 718 F.2d 897 (9th Cir.1983); *Olympic Sports Product, Inc. v. Universal Athletic Sales Co.,* 760 F.2d 910, 912–913 (9th Cir.1985).

■ The first defense of TMG is that the note implicitly provides for monthly compounding of interest. Compounding of interest is where the accrued interest is add-

ed to the principal sum due on the note and that new sum is treated as principal upon which interest is then charged. Mont.Code Ann. Section 31–1–109, provides for charging compound interest as follows:

The parties may, in any contract in writing, whereby any debt is secured to be paid, agree that, if the interest on such debt is not punctually paid, it shall become a part of the principal and thereafter bear the same rate of interest as the principal.

According to TMG's expert witness, the mortgage note of December 21, 1989, has an interest rate that is calculated and payable monthly based on a 360–day year, and that calculated monthly is the equivalent of compounded monthly. Such explanation is probably correct in money market business, but that explanation does not satisfy the express statutory requirement of Section 31–1–109. The promissory note is void of any specific language providing for the compounding of interest, and TMG's explanation to the contrary simply cannot fill the gap. It is not a matter of how the holder calculates the monthly amortization, or what the parties may have intended, rather the issue is decided on whether the written instrument itself states unequivocally that if interest is not punctually paid, that interest may be made part of the principal. TMG cannot avert the clear and plain meaning of Section 31–1–109 when it cannot point to specific provisions of the note allowing for accrued interest to be added to principal. On this issue, I find for the Plaintiff that the interest is to be calculated on an annual rate which cannot exceed 16.5%, the maximum legal rate of interest in this case under Mont.Code Ann. Section 31–1–107.

 The next issue involves whether the Reinvestment Premium and late charges are disguised interest. Plaintiff concedes that if such charges are not held to be interest, then his claim of usury fails. Plaintiff argues that the reinvestment pre-

mium is no different than the default interest charge held usurious in *Scarr*, supra, because it is compensation for the detention of funds. There is no Montana decision on point.[1] TMG contends the reinvestment premium is akin to the prepayment premium, and cites case authority which holds that a prepayment premium is not to be included as interest for the purposes of determining whether a loan is usurious. *Atlantic Life Ins. Co. v. Wolf*, 54 A.2d 641 (D.C.Ct.App.1947); *Lederman Enterprises, Inc. v. Westinghouse Credit Corp.*, 347 F.Supp. 1291, 1292 (D.Colo.1972); *In re Curtis*, 83 B.R. 853, 857 (Bankr.S.D.Ga. 1988); *Bearden v. Tarrant Sav. Ass'n.*, 643 S.W.2d 247, 249 (Tex.Ct.App.1982); *Boyd v. Life Ins. Co.*, 546 S.W.2d 132, 133 (Tex.Civ.App.1977); *Wagner v. Austin Sav. and Loan Ass'n.*, 525 S.W.2d 724, 729 (Tex.Civ.App.1975); *Davis v. Hinton*, 519 S.W.2d 776, 777 (Tenn.1975); *Gulf Coast Invest. Corp. v. Prichard*, 438 S.W.2d 658, 661 (Tex.Civ.App.1969), aff'd, 447 S.W.2d 676 (Tex.1969); *Marley v. Consolidated Mortg. Co.*, 102 R.I. 200, 229 A.2d 608, 611 (1967); *Silver Homes, Inc. v. Marx & Bensdorf, Inc.*, 206 Tenn. 361, 333 S.W.2d 810, 814 (1960); *Feldman v. Kings Highway Sav. Bank*, 278 A.D. 589, 102 N.Y.S.2d 306, 307, aff'd, 303 N.Y. 675, 102 N.E.2d 835 (1951).

TMG's witness testified that the reinvestment premium is the flip-side of the prepayment premium—the former accruing upon acceleration after default and latter accruing without default before maturity. The witness stated the reinvestment premium exists to effectuate the repayment premium, because, without the reinvestment premium, a borrower could simply default to avoid the prepayment premium. The purpose of the charge is to protect the borrower for "the loss of its investment and the risk of reinvestment." TMG states that interest accrues over time, while the reinvestment premium is a one-time charge. It is to be remembered that the note contains a specific default interest

---

**1.** The closest decision is *Cecil v. Allied Stores Corp.*, 162 Mont. 491, 513 P.2d 704 (1973) dealing with Montana's Retail Installment Sales Act, where the Court embraced the doctrine that the finance charges permitted by that Act were

"time price differentials included in the price of goods purchased on credit and payable in installments, and as such are not subject to constitutional or statutory limitations on interest rates." *Id.* 513 P.2d at 707.

clause in addition to the reinvestment premium, and such default or delay interest is computed over the term of default. *Bearden v. Tarrant Savings Association,* supra, relied on by TMG, is based on a specific Texas statute allowing for prepayment penalties which "shall be in addition to interest authorized by law." Tex.Rev.Civ. Stat.Ann. Art. 852(a), sec. 5.07. Montana has no such parallel statute. However, *Bearden* also concluded that the lender need not rely on the Texas statute because—

> [A] prepayment penalty is not a charge for the "use, forbearance or detention of money", but is actually the opposite thereof. It is a payment, a consideration, for the option or privilege, as in this case, of paying off a loan early to avoid payment of high interest over a long term of years. * * * a prepayment penalty, being a charge for the termination of the use, forbearance or detention of money, is not "interest, but is instead exactly the opposite of interest." (Citing cases.)
>
> * * * "The courts of this country have uniformly held a loan transaction otherwise free of usury is not rendered usurious by a *voluntary repayment* prior to maturity even though the interest paid to the lender exceeds the lawful interest rate computed to the date when the loan was repaid. In other words, as long as the interest charged and collected does not exceed the legal rate, calculated to the stipulated maturity date, the *voluntary* act of the borrower in prepaying the loan cannot thereby make the transaction usurious * * *." *Id.* 643 S.W.2d at 249–250. (Emphasis added).

While it is clear Texas case authority reasons that a voluntary prepayment penalty is not interest, there is another line of Texas decisions which, in defining usury, held "late charges" and "commissions" assessed upon default are usurious. These cases demonstrate there is thus a vital difference between voluntary prepayment without default and charges made after default when the note, by its terms, is accelerated. For example, *Hardwick v. Austin Gallery of Oriental Rugs,* 779

S.W.2d 438, 443 (Tex.Ct.App.1989), citing *Parks v. Lubbock,* supra, holds—

> "[T]he statutory definition of 'interest', in art. 5069–1.01(a), includes the late charges because it includes compensation for the obligor's detention of money past the date it is due and payable."

Moreover, in *Najarro v. Sasi International, Ltd.,* 904 F.2d 1002 (5th Cir.1990), discussing Texas interest and usury statutes and case authorities, several salient propositions are discussed which are applicable to the same Montana usury and interest law.

> Under Texas law, usury is defined as "interest in excess of the amount allowed by law." Tex.Rev.Civ.Stat.Ann. art. 5069–1.01(d). The essential elements of a usurious transaction are (1) a loan of money; (2) an absolute obligation that the principal be repaid; and (3) the exaction from the borrower of a greater compensation than the amount allowed by law for the use of money by the borrower. *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982).

> \* \* \* \* \* \*

Under Texas usury law, "in determining whether a loan transaction is usurious, it is substance rather than form that is investigated." *Fears v. Mechanical & Indus. Technicians, Inc.,* 654 S.W.2d 524, 530 (Tex.App.—Tyler 1983, writ ref'd n.r.e.). In *Gonzales County Sav. & Loan Ass'n v. Freeman,* 534 S.W.2d 903, 906 (Tex.1976), the court, in determining whether certain charges constituted interest under the usury laws, stated, "Charges which are in fact interest remain so, regardless of the label used." The court in *Skeen v. Slavik,* 555 S.W.2d 516, 521 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.), further expounded on this principle:

> [W]here ... a charge is admittedly compensation for the use, forbearance, or detention of money, it is, by definition, interest regardless of the label placed upon it or the artfulness with which it is concealed. Indeed, the Supreme Court in *Gonzales Savings* held

that we must look beyond the superficial appearances of the transactions to their substance in determining the existence or nonexistence of usury.

\* \* \* [A] label placed upon a charge by the parties will not control the determination of whether that charge is interest \* \* \*.

\* \* \* \* \* \*

Moreover, plaintiffs did not perform any services for defendants other than the advance of money. As the court explained in *Maxwell [v. Estate of Bankston*, 433 S.W.2d 229 (Tex.Civ. App.1968)]*,

In determining the question of usury all devices are disregarded, and whenever the courts are satisfied that there is a charge contracted for, *merely for the use of money*, in excess of that allowed by law as interest, they treat it as usurious, though usury may be covered under the guise of some additional and different consideration.

433 S.W.2d at 231 (emphasis added). Indeed, a charge made for the use, forbearance, or detention of money is interest, regardless of the label placed upon it or the artfulness with which it is concealed. *Skeen*, 555 S.W.2d at 521. The "Commission" is just such a charge for the use of money. 904 F.2d at 1005–1008.

And in discussing the proposition that when the promise to pay a sum above the legal interest rate depends upon a contingency so the loan is not usurious, *Najarro* states under a factual scheme where the note provided for 25% commission, much like a 6% reinvestment premium:

However, more recent Texas cases have adopted a contrary rule. In *Dixon v. Brooks*, 604 S.W.2d 330, 334 (Tex.Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.), the court stated, "A contract is usurious as a matter of law if there is any contingency by which the lender may receive more than the lawful rate of interest." Similarly, "[a] contract is usurious if there is any mode or contingency by which the lender could receive more than the maximum rate of interest allowed by law." *Dixon v. Brooks*, 678 S.W.2d 728, 729 (Tex.App.—Houston [14th Dist.] 1984, no writ).

Where the Texas Supreme Court has touched on the issue, it seems to favor the rule of the more recent appellate cases. *See Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 341 (Tex.1980) ("The contract under construction will not be found usurious on its face unless it expressly entitles the lender, *upon the happening of a contingency or otherwise,* to exact interest at a rate greater than that allowed by law" (emphasis added)); *Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282, 285 (1930), *cert. denied,* 284 U.S. 675, 52 S.Ct. 130, 76 L.Ed. 571 (1931) ("[A] contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest, whether it is so apparent that it becomes the duty of the court to so declare, or whether it is a case in which it is necessary that the jury should find the facts.") 904 F.2d at 1010.

Finally, *Ford Motor Credit Co. v. McDaniel*, 613 S.W.2d 513, 518 (Tex.Civ. App.—Corpus Christi 1981, no writ), holds—

"The contract, to be usurious on its face, or to provide for the payment of unearned interest, must expressly entitle the lender, upon the happening of a contingency, to exact interest at a rate greater than that allowed by law."

*Tanner Dev. Co. v. Ferguson*, 561 S.W.2d 777, 781 (Tex.1977), cited in *Anderson v. Travelers Ins. Co.*, 10 Mont.B.R. 256, 269 (Bankr.Mont.1992) holds:

"Once the agreed terms have been reduced to writing in the form of a compulsory contract, the test of alleged usury is not concerned with which party might have originated the alleged usurious provisions."

The above holdings provide some insight to the treatment of the reinvestment premiums. Contrary to the testimony of TMG's financial officer, the legal effect of charging the premium upon the contingency of default and acceleration of the note princi-

pal and interest at 6% of the accelerated amount is a charge of interest for the use and detention of money loaned. It is, as *Najarro* aptly states, a mandatory contractual charge "merely for the use of money", made in addition to the charge of "default interest" under the terms of the written agreement. Regardless of the label used, the substance of the transaction dictates that 10.375% plus 2% default on the unpaid principal plus 6% on the accelerated amount of principal and interest is all interest. Under section 31–1–104, the total sum is compensation fixed by the parties for the use or forbearance or detention of money. *See, e.g., In re Dent*, 130 B.R. 623, 627 (Bankr.S.D.Ga.1991) (a nonrebateable loan fee is a lender's charge for use of money advanced and therefore is interest); *Wright v. Transamerica Financial Services*, 144 B.R. 943 (Bankr.S.D.Ga.1992) (loan fees are interest).

■ Having found the first two issues in favor of the Plaintiff, the issue still remains whether the interest charges claimed by TMG are usurious. The note is not facially usurious since the determination of usury must necessarily be driven by the amount of reinvestment premium, which obviously changes depending on the amount accelerated. *Najarro* holds that when the transaction appears lawful on its face, as is true in this case, the party claiming usury has the burden of proof by a preponderance of the evidence. *Id.* 904 F.2d at 1005–6. To sustain such burden of proof, the Plaintiff presented testimony which computed the interest period from the date of default (11/2/90) to the date of the bankruptcy petition (1/7/92). The latter date is selected by the Plaintiff on the basis that TMG can make no charge for post-petition bankruptcy interest under 11 U.S.C. § 506, which stops the interest running at the date of the bankruptcy petition on an undersecured claim. Thus, Plaintiff argues that only default interest, which includes the 2% default interest rate and reinvestment premium plus late charges, gives rise to the usury claim. As a corollary, Plaintiff argues the so-called spreading doctrine defined in *Anderson v. Travelers Ins. Co.*, supra, at 269, relying on *Tan-*

*ner Dev. Co. v. Ferguson*, supra, does not apply in Montana, or in cases where only default interest is charged, as in *Scarr v. Boyer*. *Tanner* states the doctrine as follows:

> "If the contract for the use and detention of the principal debt is not a sum greater than such debt would produce at 10 percent per annum [legal rate] from the time the borrower had the use of the money until it is repaid, it is not usurious."

561 S.W.2d at 784.

■ Conversely, TMG argues the spreading doctrine is valid under Montana law, and since Plaintiff has conceded that if the short interest calculation period is not valid, the transaction is not usurious. In *Anderson v. Travelers Ins. Co.*, supra, I held the spreading doctrine had no application under the facts of that case, because the note there was facially usurious. In the present case, that is not true, and as a result, the spreading doctrine applies. *Anderson* notes at 270:

> "It is clear that the cases invoking the spreading doctrine, and indeed its origin as shown in the case decisions discussed in *Tanner*, involve notes where there was a prepayment of interest by discount of the principal and then an early payment or *default* before the end of the term of the note."

When the lender inadvertently receives usurious interest through the borrowers prepayment or default which causes acceleration, i.e., by the borrower's action, the prepayment or charge of reinvestment premium must be computed from the time the borrower had the use of the money until it is repaid. Thus, I conclude the one-time reinvestment premium charge being nevertheless interest, must be spread over the entire term of the loan. *See, Affiliated Capital Corp. v. Commercial Federal Bank*, 834 S.W.2d 521 (Tex.Ct.App.1992) and *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046 (1937), holding interest charged under a note would not be deemed usurious when those payments are averaged over the original life of the loan and the calculation fell within the applicable

**560**

legal rate. TMG's evidence on this point establishes that the rate of interest through the date of trial, including the reinvestment premium, would be 13.3%, well below the conceded usury rate of 16.-5%. And the Plaintiff judicially admits in the post-trial brief, and agreed facts, that "if the applicable time period is other than the date of default, November 2, 1992, through the petition date, January 7, 1992," the note is not usurious. *See, also, Collins v. Union Federal Sav. & Loan Ass'n.*, 99 Nev. 284, 662 P.2d 610, 616 (1983) (interest payments, for the purpose of usury calculations, must be prorated over the entire term of the contract). By reason of this holding, the Plaintiff's claim of usury fails.

■ I note also in conclusion that under the Debtor's Plan of Reorganization, the claim of TMG is treated as secured in the sum of $922,257, based on an appraised value of the collateral at $950,000 less the amount due for delinquent taxes, to be paid at 8% per annum over 25 years. The balance of the deficiency claim is then proposed to be paid either at 30% within 90 days of confirmation, or in full over 15 years at 8%. Under either scenario applied on the unsecured portion of the claim, the Debtor has extricated himself from any possible usury payment by his own spreading proposal. I recognize that under Montana law, usury occurs on the "charging" of an illegal rate of interest, § 31–1–108, but that provision has been effectively preempted by the Debtor in his Chapter 11 Plan. The Debtor should not have it both ways. The bottom line is that the Debtor's Plan has cured any possible "charging" of usury interest by spreading the note payment over 25 years.

IT IS ORDERED Judgment shall be entered for the Defendant, TMG Life Insurance Company, dismissing the Complaint in Adversary Proceeding No. 92/00075.

IT IS FURTHER ORDERED Debtor's objection to the Proof of Claim of TMG Life Insurance Company, as amended by pre-trial Order, is denied.