BENNETT LEHNER *vs.* ADAM HAT STORES, INC.

JULY 9, 1958.

PRESENT: Condon, C.J., Roberts, Andrews and Paolino, JJ.

CONDON, C. J. This is an action of assumpsit which was tried before a justice of the superior court sitting without a jury and resulted in a decision for the defendant. The case is here on the plaintiff's bill of exceptions to such decision and to certain rulings on the admission of evidence.

The plaintiff brought his action to recover the sum of $1,000 which he had paid to defendant in accordance with a written agreement entered into between them on June 20, 1955 in the city of New York. Such agreement reads as follows:

"Dated: June 20, 1955

Received from Bennett Lehner residing at 5 Sweetfern Road, Warwick, Rhode Island ($1,000.00) Dollars as deposit for the purchase of Adam Hat Store #86 located at 55 Asylum Street, Hartford, Conn. subject to the following:

1. Buyer agrees to purchase fixtures in store excluding signs and hat display fixtures for the sum of $16,000.00 payable $5,000.00 upon the signing of the contract and the balance in equal monthly payments together with interest at the rate of $4\frac{1}{2}\%$ per annum, over a period of five (5) years, commencing on or about July 31, 1955.

2. Buyer agrees to purchase the furnishing merchandise upon the premises at $62\frac{1}{2}\%$ of the retail price, payable 50% upon the signing of the contract and the balance in 6 equal monthly payments, together with interest at the rate of $4\frac{1}{2}\%$ per annum, commencing as of July 31, 1955, or one month from the delivery of the possession of the premises whichever comes earlier.

3. Buyer agrees to enter into a lease with Adam Hat Stores, Inc. for the remaining period of the lease terminating February 1, 1957 with the minimum annual rental of $4,800.00 with an additional rent of  *  % of the gross sales in excess of $4,800.00. Lease shall be subject to the approval of the overlandlord. Occupancy will be delivered on or about        1955. Buyer agrees to give three (3) months as security for the full and faithful compliance with the terms of the lease.

4. Buyer agrees to enter into the Adam franchise agreement for a period of five (5) years and to pay the annual fee of $1,200.00 therefor in each and every year during the term of the agreement as therein pro-

vided, or at the buyer's option the annual fee may be deducted from the hat bonus.

5. Buyer agrees to enter into the customary Adam agency agreement for a period of five (5) years or the term of the lease whichever is longer.

6. The above transaction is subject to approval by the company of the buyer's credit rating.

7. In the event the Buyer shall fail to consumate [sic] this transaction for any reason whatsoever Buyer liability shall not exceed the sum of $1,000.00 representing the deposit herein and thereupon this agreement shall cease and terminate. In the event the Seller is unable to consumate [sic] this transaction for any reason whatsoever, the sole obligation of the Seller shall be to refund the Buyer's deposit, and upon making the refund, this agreement shall wholly cease and terminate, and neither party shall have any further claims against the other by reason of this agreement.

Adam Hat Stores, Inc.
By [signed] William H. Robbins

I(we) consent and agree to
the foregoing:
[signed] Bennett Lehner

*Hat Sales — 10% to $60,000.00 — 5% over $60,000.00
Furnishings Sales — 6% to $30,000.00 — 5% over $30,000.00"

Sometime thereafter and before October 27, 1955 defendant forwarded certain written instruments to plaintiff to be executed. Such execution was necessary to consummate the transaction of June 20 in accordance with the written agreement. However, by letter of October 27 plaintiff withdrew from the agreement and requested defendant to return his deposit. Prior thereto he had refused to execute the instruments on the ground that they were "not written as agreed."

The defendant by letter of November 10, 1955 informed plaintiff that it was ready and willing to complete the transaction and that if he did not execute the instruments

by November 19 it would consider him in default. The plaintiff replied by letter of November 21 that he no longer desired to operate the store. On December 1, 1955 defendant notified plaintiff that by reason of his withdrawal from the agreement it had sustained considerable damage and was compelled to offer the store for sale again on the open market.

The defendant thereafter found another purchaser but at a much lower price than plaintiff had agreed to pay. It claimed that it had suffered a loss greatly in excess of plaintiff's $1,000 deposit and, therefore, refused to refund it. The plaintiff claimed the right to a refund and alleged as ground therefor lack of mutuality in the agreement thus depriving it of validity as a binding contract.

The trial justice in construing the agreement recognized that it did not contain any express promise by defendant to sell, but he nevertheless held that the agreement constituted a valid contract because defendant's obligation to sell could be reasonably inferred. He further construed paragraph 7 of the agreement to mean that plaintiff's liability for failure to perform was limited to $1,000 but that defendant was entitled to retain only so much thereof as it could prove it suffered in damages by reason of such failure. However, after weighing the evidence he concluded that defendant had shown such damage to the extent of the deposit.

The plaintiff has expressly waived exceptions numbered 1, 2, 3, 4, 5, 6, 7, 10, 11, 12 and 14. He has prosecuted a separate exception to each ruling of law and finding of fact in the trial justice's decision and these are numbered 15, 16, 17 and 18 in his bill of exceptions. It is neither necessary nor desirable to prosecute separate exceptions to the decision of a trial justice sitting without a jury. *Dubee* v. *Feinstein*, 61 R. I. 214. We shall treat them as though there was but a single exception to the decision

based on the grounds that such decision is against the law and the evidence and the weight thereof.

In our opinion the decision was not against the law. Looking at the agreement as a whole to find the intention of the parties, we think it is reasonably clear that defendant impliedly promised to sell in consideration of plaintiff's expressed promise to purchase. Certainly the provisions of paragraph 7 are predicated on such an assumption; otherwise why provide therein against the seller's inability to consummate the transaction if it was under no obligation to sell. This agreement was drawn by defendant and entered into at its office in New York City. If plaintiff had brought his action there and contended that the agreement was as one sided as he contends here he would not, in our opinion, prevail. It has been held in New York that an intention to make a wholly one-sided agreement is not to be readily inferred. *Moran* v. *Standard Oil Co.*, 211 N. Y. 187. In that case the court laid special stress on the use of the word "agreement" saying at page 197: "The very word 'agreement' connotes a mutual obligation. * * * There may be a 'promise' to serve without a promise to employ, but there can be no 'agreement' for service without mutuality of rights and duties."

That court has also held that an obligation although not expressed in the written instrument may be implied. *City of New York* v. *Delli Paoli*, 202 N. Y. 18, 22. "In reading a contract," the court said, "we are not, necessarily, limited to its exact words in interpreting its obligations; we are to consider what its language implies as the intention of the parties." And in supplying the words which it held were required to make such intention effective the court, at page 23, gave this reason for its action: "It is not a case of an omission by the parties, which courts will not feel justified in supplying; it is a case where the language used by them shows that an additional, or correlative, covenant was intended, which the courts should, and will,

supply." In an earlier case the same court affirmed a holding below in which mutuality of obligation was implied and where the lower court had said: "The form of the obligation is not material so long as the intention of the parties can plainly be gathered from the instrument." *W. P. Fuller & Co.* v. *Schrenk,* 58 App. Div. 222, 226, aff'd without opinion, 171 N. Y. 671. See also *Wood* v. *Duff-Gordon,* 222 N. Y. 88.

The above-cited cases are, in our opinion, sufficient to show that the law of New York where the agreement was made sanctions the action of the trial justice in the case at bar in finding mutuality of obligation implied in such agreement. But plaintiff nevertheless contends the explicit language of paragraph 7 demonstrates that defendant assumed no liability whatsoever for failure to carry out the contract, since it could at any time refuse to do so by tendering plaintiff his deposit of $1,000, whereas plaintiff was bound to purchase or else forfeit such sum. We do not agree with plaintiff's interpretation of paragraph 7. It is not correct to say that defendant could arbitrarily refuse to sell and absolve itself from all liability by, at the same time, merely tendering plaintiff his deposit.

The language in that paragraph upon which he relies for his contention is: "In the event the Seller is unable to consumate [sic] this transaction for any reason whatsoever, the sole obligation of the Seller shall be to refund the Buyer's deposit, and upon making the refund, this agreement shall wholly cease and terminate, and neither party shall have any further claims against the other by reason of this agreement."

Such a provision in a written agreement must be given a reasonable construction. It does not give the seller the right arbitrarily or of his own volition to terminate the agreement. "It is," as was said in a New York case involving a similar provision, "merely a protection against unforeseen difficulties that might arise which would without

his fault or neglect, make it impossible for him to perform." *U. S. Expansion Bolt Co.* v. *Marmorstein,* 181 App. Div. 790. And so in that case it was held that the seller was bound to sell unless he could show that he was deprived of his ability to do so. To the same effect is *Meade* v. *Poppenberg,* 167 App. Div. 411.

In other jurisdictions the same construction has been given to similar provisions contemplating the possibility of a party to an agreement being *unable* to perform. For example, in *Amsden Lumber Co.* v. *Stanton,* 132 Kan. 91, 92, the court held that a contract to sell cement was not lacking in mutuality because of a provision therein which excused one party from performing "in the event the shipper shall at any time for any cause whatsoever be unable to make and ship cement in accordance with its agreements * * *." In answering a contention that the shipper had an absolute right to rely on that provision the court said at page 95: "However, the cement company would be obligated under this contract to act in a reasonable manner and would be precluded from a mere arbitrary decision to prorate its cement among various customers, and this decision would have to be motivated by some cause beyond its control, before it would have a right to exercise that option."

The underlying cause of complaint which plaintiff in the case at bar seems to have against paragraph 7 is that it imposes a heavier burden upon him than it does upon defendant. Be that as it may, it is not a sufficient ground for a finding that the agreement is lacking in mutuality. This provision amounts to a reservation of a right in each party to cancel the agreement subject to certain conditions. That the condition applicable to one party is lighter than the condition applicable to the other does not render the favored party's promise illusory. "No court or writer has maintained that the validity of a contract depends upon an objective equality of advantages or values. Each prom-

ise made by one party does not have to be matched by an equivalent promise made by the other. Each right or power or privilege possessed by one party does not have to have its exact counterpart in the other." 1 Corbin, Contracts, §161, p. 533. Agreements to cancel need not be commensurate. *Phoenix Hardware Co.* v. *Paragon Paint & Varnish Corp.*, 122 N. J. Eq. 140. Our examination of the authorities confirms our view that the decision of the trial justice is not contrary to law.

The plaintiff's contention that there is no evidence to support the trial justice's finding that defendant had proved a loss in excess of $1,000 by reason of plaintiff's default is without merit. We have carefully read the transcript and we are satisfied that there is sufficient evidence therein to support such finding.

This brings us to plaintiff's exceptions 8, 9 and 13 to the admission of certain evidence. Those exceptions have not been argued separately and distinctly but have been briefed under two points more or less generally. The plaintiff's treatment of them in this manner is not as clear as it might be. But, if we understand him correctly, exceptions 8 and 9 are based upon a contention that the letters of defendant mailed to him after his letter of October 27, 1955 were in the nature of self-serving declarations and therefore inadmissible. In our view there is no merit in either exception.

Exception 13 is to the denial of the plaintiff's motion to strike the testimony of the defendant's witness William H. Robbins, who testified to having received an offer of $2,500 for the fixtures from George Brugg after the plaintiff refused to perform the agreement. Assuming without deciding that such testimony was inadmissible as hearsay it did not, in our opinion, prejudice the plaintiff since there was other evidence from which the trial justice could reasonably infer that the damages and expenses of the defendant re-

sulting from the plaintiff's breach more than equaled his deposit of $1,000.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Abraham Marks,* for plaintiff.

*Thomas W. Pearlman,* for defendant.