229 A.2d 608.

ROSE O. MARLEY *vs.* CONSOLIDATED MORTGAGE COMPANY.

ROSE O. MARLEY *vs.* SECURITY ACCEPTANCE CORPORATION OF RHODE ISLAND.

MAY 15, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J.   These are two actions of the case brought on the authority of G. L. 1956, §6-26-4, seeking to recover payment of principal and interest, made by the plaintiff in discharge of a loan alleged to be usurious within the meaning of §6-26-2.   They are before us on the plaintiff's appeals from judgments entered in the superior court denying her motion for summary judgment and granting the defendant's motion for such judgment in each case.

The record establishes that on March 4, 1964, Consolidated Mortgage Company, a Rhode Island corporation, hereinafter called "Consolidated," loaned plaintiff $3,450 in consideration of which she on that day executed a negotiable promissory note in the sum of $6,321.   This sum included the amount of the loan, $450 for expenses incidental to the making thereof, and $2,421 interest.   Thereafter, "Consolidated" assigned the note to Security Acceptance Corporation of Rhode Island, hereinafter referred to as "assignee."

By the terms of the note plaintiff was obligated to make 84 installment payments of $75.25 each month commencing on April 4, 1964, and payable on the fourth day of each

month thereafter. In addition, the note provided that the maker shall have no right of prepayment unless specifically agreed upon by the holder in writing.

However, on the same day and for all practical purposes simultaneously with plaintiff's execution of the note, "Consolidated" executed a separate agreement in writing granting to plaintiff the right to "* * * prepay her loan after a twelve (12) month period and * * * [it] * * * will be rebated by what is commonly known in the banking business as the Rule of '78's method'."[1]

The record further establishes that plaintiff made regular monthly payments from April 1964 through May of 1965 and on June 4, 1965, exercised her option to prepay by making a payment of $3,431.50.

On August 23, 1965, plaintiff commenced an action of the case against "Consolidated" and a separate action against the "assignee." She predicated each action on the authority of §6-26-4, which in pertinent part provides:

"Every contract hereafter made in violation of any of the provisions of §6-26-2, and every mortgage, pledge, deposit, or assignment made or given as security for the performance of such contract, shall be usurious and void; * * * if the borrower shall, either before or after suit, make any payment on such contract, either of principal or interest, or of any part of either, and whether to the lender, or to any assignee, indorsee or transferee of such contract, the said borrower shall be entitled to recover from the lender the amount so paid, in an action of the case. * * *"

The actions having been commenced in 1965, the original pleadings of plaintiff and defendants conformed to the prac-

---

[1]The Rule of 78's is a form of the sum-of-the digits computation used by banking and loan establishments to determine the amount of rebate due as unearned discounts or charges when loans are prepaid before maturity pursuant to prepayment options. A comprehensive discussion of this principle can be found in the American Bankers Association publication "Rebate of Instalment Loan Charges."

tice which then prevailed; but after January 10, 1966, the effective date of the new rules of civil procedure, the parties adhered to the new practice. Pursuant to rule 56 of said rules of civil procedure, plaintiff on June 15, 1966, filed a motion for summary judgment together with a supporting affidavit in each case. On June 18 and 20, 1966, "Consolidated" and "assignee" respectively also filed motions for summary judgment based on the allegations contained in plaintiff's affidavit in the case in which each was defendant. Thereafter, June 23, 1966, on motion of defendant "Consolidated," the two cases were consolidated for trial in accordance with the provisions of rule 42 of the rules of civil procedure.

On July 1, 1966, all motions were heard by a superior court justice who, on the state of the pleadings in each case, denied plaintiff's motion for summary judgment and granted that of defendant in each case. Thereafter, July 5, 1966, a judgment was entered for "assignee" pursuant to the decision of July 1. On July 8, 1966, another justice of the superior court ordered judgment entered for defendant "Consolidated." By order of this court the cases were consolidated for hearing before us.

In support of her position that the superior court justice erred, plaintiff makes several related contentions. They are: first, that although consisting of separate instruments, the note and the prepayment option are in substance a single transaction; secondly, that by fixing the earliest moment for prepayment on the 78's formula, plaintiff, electing to repay at that time, would be required to pay interest and expenses incidental to the making of the loan in excess of the 30 per cent per annum authorized by the statute; and lastly, that the transaction thus viewed was rendered null and void by reason of the unusual language of §6-26-2, *supra*. It provides:

> "No person, partnership or corporation, hereafter loaning money to or negotiating the loan of money for

another, except duly licensed pawnbrokers and persons licensed under the provisions of chapter 25 of title 19, shall, directly or indirectly, reserve, charge or take interest on such loan, whether before or after maturity, at such a rate, or reserve, charge or take compensation for services or expenses incidental to the making, negotiation or collection of such loan, in such an amount, that the total of one year's interest, reckoned at the rate so reserved, charged or taken, and of all such compensation for services and expenses, shall exceed thirty per cent (30%) of the amount actually received by the borrower, on all amounts exceeding fifty dollars ($50.00), whether in one or more loans, and on all amounts not exceeding fifty dollars ($50.00), five per cent (5%) per month, for the first six (6) months, and thereafter two and one-half per cent (2½%) per month of the amount actually received by the borrower."

Both defendants concede that the amount of interest and compensation for services and expenses computed by the 78's method would at the end of one year be in excess of 30 per cent of the amount loaned. They deny in effect, however, that plaintiff could elect to make usurious an obligation otherwise valid by exercising a prerogative which she alone possessed. They argue that the legal principle involved was decided adversely to plaintiff's position by this court in *Reichwein* v. *Kirshenbaum*, 98 R. I. 340 at 343, 201 A.2d 918 at 920, where we stated, " * * * a debtor by his voluntary act cannot render usurious that which but for such act would be free from usury." Indeed, defendants stress that a contrary decision cannot be found in the reported cases of our sister states.

The plaintiff, however, and with considerable justification, argues that our holding in *Reichwein* is not controlling in the instant cases for the reason that in the *Reichwein* case no prepayment option existed; whereas in the cases now before us an agreement permitting prepayment was made simultaneously with the making of the loan and it is this distinguishing fact, she contends, that makes the pre-

payment terms part and parcel of the loan itself. She argues that if we accept this premise, it follows that the time period at which the option to prepay could be exercised, coupled with the repayment formula, results in an obligation to pay an amount in excess of the statutory limit, and that the loan agreement therefore was usurious when executed.

While we are inclined to agree that the negotiation of the loan, when viewed realistically, must have involved an understanding between the parties that plaintiff would have an enforceable right of prepayment on predetermined terms, we are not persuaded there was but a single agreement involved in this one transaction. Rather, we think that the transaction resulted in separate and distinct agreements, the one executed and the other executory.

When the terms of the executed loan agreement are tested against the statute it is clear that they are nowise violative thereof.

While it is likewise true that in *Reichwein* v. *Kirshenbaum, supra,* we noted that an option to pay in advance of maturity was not a factor in that case, we did not thereby intend to imply that the question was not still at large. So reading that decision, defendants in their arguments note that in reaching our decision in the *Reichwein* case we referred to authorities wherein were discussed the effect of prepayment options given simultaneously with the execution of loan agreements.[2]

An examination of these authorities, and cases cited, discloses that the reviewing courts could find no logical reason for construing as usurious an otherwise valid loan transaction, simply because it included an offer from the lender permitting the borrower to pay in advance of maturity on conditions which would not be objectionable if contained in an agreement made subsequent to the loan transaction.

---

[2]Anno., 130 A.L.R. 73; 75 A.L.R. 2d 1265; 55 Am. Jur., Usury, §47, p. 359.

In *Grall* v. *San Diego Bldg. & Loan Ass'n*, 127 Cal. App. 250, 254, 15 Pac. 2d 797, 799, rejecting the same contention that plaintiff makes here, the court observed:

> " * * * If this contention is correct, a note for $100 for one year at 5 per cent interest, the interest paid in advance, would be usurious if it contained a clause that the debtor might pay the note at any time after one day."

Moreover, our independent research has discovered no reported cases laying down a rule to the contrary.

Nevertheless, plaintiff argues that because of the peculiarly unique language of §6-26-2, cases cited from other jurisdictions are not apposite. In this regard she stresses the importance of the phrases " * * * whether before or after maturity * * *" and " * * * directly or indirectly, reserve, charge or take interest on such loan * * *."

This argument, as it applies to the phrase "whether before or after maturity," was rejected by us in *Reichwein* v. *Kirshenbaum, supra*. Here, as there, the borrower's contention is that the statute prohibits a lender from charging for the right to exercise a privilege of prepayment a sum greater than the maximum interest which could have been collected from the borrower for the period during which she had the use of the borrowed funds. Interpreting the words "or after maturity" as employed by the legislature when enacting §6-26-2, this court commented in the *Reichwein* case, 98 R. I. at 344, 201 A.2d at 920:

> "In our opinion the legislative concern was with those agreements where it is provided that a debtor who does not pay his obligation by maturity shall thereafter pay a rate of interest in excess of the permitted maximum. Under the prevailing view such a postmaturity charge does not render that type of contract usurious so long as the parties act in good faith and without intention to evade the usury laws. 55 Am. Jur., Usury, §45, p. 356. It was to insure the applicability of our usury statutes to these transactions which was within the contemplation of the legislature and motivated the in-

clusion in the statute of the words 'whether before or after maturity.' By this means the legislature clearly evinced an intention to protect a borrower from paying and a lender from exacting a legally excessive rate of interest on obligations not met by a debtor on or before maturity."

The added factor of the prepayment option in the instant case in no way serves to distinguish the present case from *Reichwein* with regard to the words "whether before or after maturity" and plaintiff's contention to the contrary is without merit.

More troublesome, however, is her argument that a prepayment option such as that given by the lender here constitutes an indirect reserve or charge of interest contrary to the expressed provision of the statute. When read without relating the language relied on to the legislative intendment, the prepayment option given simultaneously with the making of the loan appears to be a violation of the prohibition expressed by the statute. We think, however, that the language must be read in connection with the purpose that the legislature sought to achieve. It is fundamental that its purpose was to provide protection for borrowers who, because of economic circumstances, were forced to borrow money at interest rates that the legislature deemed so outrageous as to be contrary to sound public policy.

We think it against all reason that the general assembly of this state intended by the language it used to preclude a borrower who has entered into an onerous but valid obligation from terminating that obligation before maturity at a substantial saving of interest which would otherwise have to be paid if the original agreement had run to maturity. In *Reichwein* we held that after the loan agreement had been made a borrower could, by means of a subsequent agreement made with the lender, terminate his obligation before maturity by the payment of a sum in addition to the amount received which, if demanded within the same

time period, would have constituted usury if contained in the original agreement. It would be ironic were we now to hold that as to a right of prepayment a borrower must take his chances on reaching an agreement subsequent to the making of the loan, although the lender simultaneously with said loan offers a right of prepayment on conditions not contrary to the provisions of the statute if contained within an agreement made subsequent to the loan.

In the instant case, for example, plaintiff became obligated on March 4, 1964, to make 84 consecutive monthly payments of $75.25 on a loan of $3,450 and she concedes that without the prepayment option the agreement is not violative of the applicable statute. The total amount that she became validly obligated to pay was $6,321 and the holder of her note, absent the prepayment option, could not have been required to permit payment before maturity for less than the face amount of the note. *Smithwick* v. *Whitley,* 152 N.C. 366, 67 S.E. 914 (1910); *Cooke* v. *Young,* 89 S.C. 173, 71 S.E. 837 (1911). By reason of the option which she alone could exercise, however, she discharged her obligation for a sum in excess of $1,800 less than that which she would have been otherwise required to pay.

As heretofore observed, we think that the executory option to prepay is separate and distinct from the executed loan transaction. So viewed, the words " * * * directly or indirectly, reserve, charge or take interest * * *" apply exclusively to the words next following, namely, "on such loan" and are not applicable to a simultaneously given prepayment option which does not call for a sum greater than that which the borrower would be obligated to pay were the loan to run to maturity. As is so often the case, it has and may be said that the legislature never intended to permit one who relies on its protection to convert into a sword that which it intended to provide as a shield.

In each case the plaintiff's appeal is denied and dismissed, and the summary judgment is affirmed.

*Perry Shatkin,* for plaintiff.

*Roberts & McMahon, William F. McMahon,* for Consolidated Mortgage Company.

*Edwards & Angell, James K. Edwards,* for Security Acceptance Corporation of Rhode Island, for defendants.