The **HOLLISTON MILLS, INC.**

v.

**CITIZENS TRUST COMPANY et al.**

No. 90–441–A.

Supreme Court of Rhode Island.

March 10, 1992.

J. Robert Weisberger, Wistow & Barylick, Inc., Providence, for plaintiff.

Anthony F. Muri, Goldenberg & Muri, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This is an appeal from an order entered in Superior Court granting a motion for summary judgment in favor of the defendant, Citizens Savings Bank (Citizens). The plaintiff, The Holliston Mills, Inc. (Holliston), brought this action to recover amounts taken from its receivables by Citizens as a prepayment premium according to the terms of the loan agreement between the parties. Holliston maintains that the trial justice erred in concluding

that there were no genuine issues of material fact supporting its position. We find that the trial justice's determination was proper and therefore affirm the lower court judgment. The relevant facts are as follows.

On January 16, 1986, Holliston and Citizens entered into a loan-and-security agreement involving two types of loans, a revolving loan of up to $12,800,000 and a five-year term loan of $3,200,000. The agreement included a provision for Citizens to receive and control Holliston's receivables, referred to as lock-box collections, as security in order to satisfy Holliston's outstanding fees and other obligations. Section 10 of the agreement provides:

"The term of this Agreement shall commence on the date hereof and shall continue until all Obligations shall have been fully paid and satisfied. Either party may terminate this Agreement on thirty (30) days prior written notice effective any time after December 31, 1986, but such termination shall not affect the duties of Borrower hereunder or the security interest of Bank in the Collateral so long as any Obligations are outstanding, and notwithstanding such termination, Borrower shall continue to assign Receivables to Bank and turn over all collections to Bank as herein provided, until all the Obligations are paid in full and satisfied."

Section 11.12 of the agreement mandated a percentage premium Holliston would have to pay upon prepayment within three years after December 31, 1986, if the prepayment was made either in whole or in part out of money other than the proceeds of Holliston's internal business operations. Read along with section 10, the provision imposed a 5 percent charge if debtor Holliston prepaid either of the loans within the first year after December 31, 1986, a 3 percent charge if paid within the second year, a 1 percent charge if paid within the third year, and no charge thereafter. Section 11.7 provides:

"If Bank shall employ counsel in connection with the execution and consummation of the transactions contemplated by this Agreement or to take any action in or with respect to any suit or proceeding (bankruptcy or otherwise) relating to this Agreement, or to prepare this Agreement or any amendment or waiver in connection with this Agreement, or to enforce the security interest of Bank in the Collateral, or to enforce any other rights of Bank hereunder whether before or after the occurrence of any Event of Default, or to collect any of the Obligations, then in any of such events, all reasonable attorneys' fees and any expenses, costs and charges relating thereto, shall be part of the Obligations, payable on demand and secured by the Collateral."

Therefore, the obligations owed according to section 10 included both the prepayment premium according to section 11.12 and reasonable attorneys' fees according to section 11.7 of the agreement.

On August 25, 1987, Holliston sent written notice to Citizens that it was terminating the agreement in accordance with the terms and rights under section 10. Holliston stated it intended to pay all its obligations on or before September 24, 1987. Citizens sent Holliston a response letter on August 27, 1987, calculating the amount due from the loans, which amount included a prepayment premium of $376,958.80. On September 24, 1987, Holliston paid Citizens $11,888,707.54, the sums due, less the prepayment premium. On that same day Citizens revised its payment amount, including a prepayment premium of $348,373.13, adjusted after taking into consideration money paid to Citizens out of its lock-box collections of receivables. Citizens then obtained a further revised sum of $341,624.40 from Holliston's receivables in lock-box collections, which it held pursuant to the loan agreement. The payment included $91,949.25 for the term loan, $246,175.15 for the revolving loan, and $3,500 in legal fees incurred in connection with the prepayment-premium collection.

Holliston filed a three-count complaint in Superior Court on October 22, 1987, seeking to recover the total amount of $341,624.40, alleging breach of express contract, breach of implied contract, and conversion.

On November 10, 1989, Holliston moved to amend its complaint, adding two additional counts: there was a lack of consideration for the prepayment premium, and the loans were due on demand, rendering their payment not a prepayment. Holliston's motion was granted on November 20, 1989. Holliston was seeking return of the amounts improperly collected by Citizens as a prepayment premium, including interest and costs.

On September 28, 1989, Citizens filed a motion for summary judgment to which Holliston objected and on December 5, 1989, filed a cross-motion for summary judgment. A hearing was held before the Superior Court on February 27, 1990. The trial justice considered the facts and issues presented in the instant case and entered summary judgment for Citizens on February 28, 1990. The trial justice found the termination notice under section 10 of the loan agreement to be mutual, allowing either party the right to so terminate. He also noted that the relationship of the parties and the entire agreement dictated Holliston's payment to be a prepayment. The trial justice did not agree with the proposition that separate and distinct consideration was needed for the prepayment. The trial justice stated, "The prepayment provision is merely a method by which the bank has established that it is economically feasible for them to loan money on those particular terms and conditions, and considering it in its entirety, there is consideration for the agreement."

The trial justice found that the prepayment provision clearly stated that the bank was forfeiting a right to the amount of interest it would have earned over the ordinary time on the loan. This forfeiture was counterbalanced by the right to obtain full and complete satisfaction of the loan. Further, the trial justice found that Citizens's security in obtaining interest had been jeopardized by Holliston's voluntary actions. In finding the prepayment provision proper and the agreement supported by consideration, the trial justice stated that the premium owed in the place of expected interest payments was "derived so that it was economically feasible for the bank to advance the sums required by Holliston." Holliston appealed the Superior Court judgment on March 13, 1990.

The issue presented before this court is whether the trial justice erred in concluding that when he granted Citizens's motion for summary judgment, there were no genuine issues of material fact to support Holliston's position. Holliston contends that such genuine issues of material fact did exist with respect to whether the loans were in effect demand loans, the agreement was illusory, the prepayment-premium provision required separate consideration, and failure to provide the required consideration rendered the premium provision unenforceable.

■■■ Under Rule 56 of the Superior Court Rules of Civil Procedure, a party may make a motion for summary judgment to the trial justice on the basis that there exists no genuine issue of material fact to be resolved and, therefore, the trial justice may make a determination of whether the moving party is entitled to judgment as a matter of applicable law. *Ludwig v. Kowal*, 419 A.2d 297, 301 (R.I.1980). The trial justice views the evidence in a light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in support of the party's claim but not resolving facts. *Mullins v. Federal Dairy Co.*, 568 A.2d 759, 761 (R.I.1990); *Rustigian v. Celona*, 478 A.2d 187, 189 (R.I.1984). Summary judgment is proper when there is no ambiguity as a matter of law. *Lennon v. MacGregor*, 423 A.2d 820, 821–22 (R.I. 1980). If no issues of material fact exist, then the trial justice decides whether the moving party is entitled to judgment as a matter of law before entering a summary judgment order. *Rustigian*, 478 A.2d at 189.

■■■ On appeal this court is to review the propriety of the summary judgment order according to the same standards that the trial justice applies in deciding whether to grant a party's motion for summary judgment. *Steinberg v. State*, 427 A.2d 338, 340 (R.I.1981); *see Grissom v. Paw-*

*tucket Trust Co.*, 559 A.2d 1065, 1066 (R.I. 1989). This court is to decide whether, after examining all pleadings and affidavits and materials in a light most favorable to the nonmoving party, there is a genuine issue of material fact supporting that party's claim. A party who opposes such a motion must not rely solely on pleadings but must assert facts that raise a genuine issue to be resolved. *Volino v. General Dynamics*, 539 A.2d 531, 533 (R.I.1988).

In the present case Holliston asserts that the trial justice erred in granting Citizens's motion for summary judgment because there actually did exist genuine issues of material fact. Holliston asserts that the loans were in effect demand loans, thereby rendering the loan agreement illusory. Further, Holliston contends that Rhode Island case law mandates that prepayment provisions are separate agreements requiring separate consideration and that in this case no such consideration existed between Holliston and Citizens in the prepayment-premium agreement. We find that the loans were not demand loans and that the loan agreement was not illusory. The prepayment provision in the loan agreement was not a separate agreement requiring separate consideration, and there existed adequate consideration for the loan agreement as a whole. We conclude that the trial justice properly found that because no genuine issues of material fact exist that require a trial determination and upon which a trial justice could find for the opposing party as a matter of law, Citizens was therefore entitled to summary judgment.

 Holliston first asserts that the term loan and the revolving loan were payable on demand after thirty days' notice and that because Citizens had no obligation to support its right to a prepayment premium, the contract was thereby rendered illusory. It contends that because of the difficulty in paying "such a huge sum of money without at least thirty (30) days to marshal the necessary funds * * * the distinction between a demand note and a loan payable upon thirty days notice is a distinction without a difference." We conclude that these loans were not demand loans because the borrower, Holliston, had thirty days to repay once it presented its notice of termination and the prepayment option could not be exercised by either party until after December 31, 1986. Both loans were restricted by prohibiting prepayment before December 31, 1986. The term loan expressly prevented prepayment before December 31, 1986, and the revolving loan was payable subject to section 10 of the loan agreement, which set December 31, 1986, as the earliest date for prepayment. Both parties were seasoned veterans in the loaning process and, in participating in loan transactions, fully aware of the prepayment provision that did not operate unfairly to either party. The fact that the revolving loan in the present case was not for a fixed period is not dispositive of its character. The money was to be retained for a predetermined time, with prepayment at the option of either party, an option that Holliston voluntarily exercised. The loans were not payable on demand at any time by Citizens. Rather the loans were payable according to a schedule or, in the alternative, at a prepayment time exercisable by either party after December 31, 1986. Citizens required Holliston to pay a premium if Holliston chose to repay out of money other that its receivables and before five years had expired. We conclude that there exists no factual basis to support Holliston's contention that these loans were demand loans.

 In general termination clauses supported by adequate consideration are not illusory, but if a termination clause allows a party to terminate at any time at will without more, that promise is illusory. It is only binding on one party because the other party has in effect promised nothing. *See generally* I *Farnsworth on Contracts* § 2.14 (1990); I *Williston on Contracts* §§ 104, 105 (Jaeger 3d. ed. 1957). However, if the relevant provision requires the party to give notice a stated time before termination is effective, that promise is sufficient consideration for a valid contract, not rendering it invalid for lack of consideration or mutuality. *See generally* I *Williston on Contracts* § 105.

In *Lehner v. Adam Hat Stores, Inc.*, 88 R.I. 88, 143 A.2d 313 (1958), a party sought to avoid an agreement, charging that the promises lacked mutuality. This court found that the "provision amounts to a reservation of a right in each party to cancel the agreement subject to certain conditions. That the condition applicable to one party is lighter than the condition applicable to the other does not render the favored party's promise illusory." *Id.* at 96, 143 A.2d at 317. Similarly in *Joni Auto Rentals, Inc. v. Weir Auto Sales, Inc.*, 491 A.2d 328, 330 (R.I.1985), this court found that when one party's obligation was triggered by the other party's promise to do something, there was a corresponding obligation on the promising party's part and the contracts were not therefore illusory. We have also declined to find the contractual promise illusory in an agreement in which both parties are bound to act. *Petrone v. Davis*, 118 R.I. 261, 266, 373 A.2d 485, 488 (1977).

 In the present case the contract terms required notice and provided thirty days within which to satisfy all obligations owed to the lending party according to the loan agreement. The terms provided that neither party could exercise the option to seek prepayment until one year had expired from the making of the loans and the signing of the agreement. The agreement between the parties was therefore not illusory. The power of termination was not arbitrary in either party. Each party promised something in exchange for the other's promise. Holliston promised to pay the loan and prepayment premium if it opted to prepay ahead of schedule, and Citizens promised to allow the prepayment in exchange for full payment within thirty days at an agreed-upon schedule of percentages after December 31, 1986. This was not an unrestricted unilateral right of cancellation exercisable at any time but rather one that provided limits and restrictions constituting the necessary legal detriment of consideration and conditions so as not to render the agreement illusory.

Holliston was being loaned a substantial amount of money and being offered the option of prepayment. Citizens had to derive some benefit from this loan and to compensate for interest it would lose by virtue of Holliston's prematurely exercising the prepayment option. Holliston voluntarily decided to prepay the loans with full knowledge of the prepayment premium that would be owed. Assigning percentages of the principal loan amount as a premium is within the benefit due and accruing to Citizens in exchange for allowing Holliston to borrow large sums of money and prepay at an earlier time prior to maturity.

Holliston next contends that Rhode Island law mandates that a prepayment-premium provision of an agreement constitutes a separate agreement and must be supported by consideration separate from the mere making of a loan, citing *Reichwein v. Kirschenbaum*, 98 R.I. 340, 343, 201 A.2d 918, 920 (1964), and *Marley v. Consolidated Mortgage Co.*, 102 R.I. 200, 205, 229 A.2d 608, 611 (1967), as controlling law on this principle. The narrow holding of those stated cases is not controlling on the issues raised regarding the present loan agreement between the parties. The principle of treating prepayment provisions as separate agreements as presented in these cases is not applicable to all prepayment provisions in all circumstances and loan transactions.

In *Reichwein* the loan agreement containing the payment provisions contained no provision expressly entitling the makers of the note to the option to prepay. 98 R.I. at 341, 201 A.2d at 919. That case involved an allegation of usury because the amount charged for prepayment exceeded the amount that the lender could statutorily charge as interest. This court found the contract free from usury, stating that the rationale was based on

"the right of a lender who has bargained to let his money out over an agreed period of time to be compensated by a borrower who for his own advantage seeks and is granted the privilege of prepayment, a privilege not otherwise his. Such a prepayment the authorities *treat* as a charge made for a new and

separate agreement in termination of an indebtedness and not as consideration for the making of a loan or of a forbearance for money." (Emphasis added.) *Id.* at 343, 201 A.2d at 920.

This court found that by construing the agreement to prepay as a separate agreement, this is not a payment of interest and cannot serve as a basis for a usury claim. *Id.* The case therefore centered not on the issue of all prepayment provisions constituting separate agreements but instead on the situation in which no agreement providing for prepayment exists as part of the loan-agreement contract as a whole, yet that right is separately extended. To prevent such transactions from being considered usurious, this court treated the prepayment premium as a separate agreement, not as an interest payment on the existing note. The underlying rationale was that construing the transaction in this manner protected parties from rendering something usurious that would not be except for the debtor's voluntary act. *Id.*

In *Marley v. Consolidated Mortgage Co.*, 102 R.I. 200, 229 A.2d 608 (1967), the note agreement did not provide a prepayment right unless the parties separately agreed to do so in writing. Within the agreement terms, the borrowing party simultaneously executed a separate agreement instrument in which the lender granted the borrower the right to prepay and included a formula to establish the rebate due to the lender when the borrower exercised the option to prepay. *Id.* at 202 n. 1, 229 A.2d at 609 n. 1. The borrower asserted that the agreement that permitted prepayment and the loan agreement itself were essentially the same transaction, and because the amount due as a premium was over the statutory limit, this rendered the prepayment—rebate agreement usurious. *Id.* at 204–05, 229 A.2d at 610–11. Although the negotiation of the loan would have involved the prepayment right, this court was "not persuaded there was but a single agreement involved in this one transaction" and concluded that "the transaction resulted in separate and distinct agreements, the one executed and the other executory." *Id.* at 205, 229 A.2d at 611. In

finding this separately executed agreement not violative of usury laws, this court found that "the executory option to prepay is separate and distinct from the executed loan transaction." *Id.* at 208, 229 A.2d at 612.

These cases are distinguishable because they concerned issues of violation of the usury statute, G.L.1956 (1985 Reenactment) § 6–26–2, as amended by P.L. 1986, ch. 359, § 2, and involved separate agreements. The issue of usury has been neither addressed nor charged in the present case before this court. Holliston proposes that the prepayment provision embodied in the loan agreement between Holliston and Citizens is a separate agreement for which separate consideration is required. This proposition is not what *Reichwein* and *Marley* represent. Those cases are clearly distinguishable because no prepayment provision was embodied within either loan transaction. Therefore, we conclude that the prepayment provision in the loan agreement between Holliston and Citizens was not a separate agreement for which separate consideration was required.

We decline to rewrite documents in the banking industry. In the present case the sophisticated and experienced parties expressly and knowingly entered into the agreement that contained provisions including the prepayment option exercisable after one year and requiring a premium payment if said option was exercised within the first three years after December 31, 1986. The loan agreement itself contained consideration between both Holliston and Citizens. Holliston was receiving the benefit of being loaned large sums of money and the option to prepay, and Citizens in return was receiving the ability to collect interest on the loans. If Holliston voluntarily opted to prepay, this prepayment would terminate interest payments to Citizens. In exchange Citizens included a common prepayment premium, a percentage of the funds borrowed, graduated downward with time. Citizens also extended to Holliston thirty days' reprieve within which to satisfy the obligations

owed. This is a benefit that Citizens bargained for with Holliston, having full knowledge, as a benefit for Citizens's loaning such a large sum of money and extending to Holliston the privilege of prepayment. A prepayment premium is not a charge for use of money but is instead a consideration granted to the party who has extended to the borrowing party the option or privilege of early repayment and avoidance of further accrued interest. *See, e.g., Bell Bakeries, Inc. v. Jefferson Standard Life Insurance Co.,* 245 N.C. 408, 418, 96 S.E.2d 408, 415 (1957); *Bearden v. Tarrant Savings Association,* 643 S.W.2d 247, 249 (Tex. Ct.App.1982); *Boyd v. Life Insurance Company of the Southwest,* 546 S.W.2d 132, 133 (Tex.Civ.App.1977).

The relevant issue is not usury but instead whether consideration is necessary for the provisions of the loan agreement. The agreement between the parties was fair and bargained for, and we therefore decline to rewrite the loan agreement and prepayment provision in which the terms embodied in one instrument represented the meeting of the minds of the parties. The terms of the contract did not render it illusory or unsupported by adequate consideration but clearly entitled Citizens to collect the prepayment premium. By its own voluntary act Holliston cannot avoid the premium payment for the privilege of prepayment on terms to which it expressly agreed. We therefore find that the trial justice correctly found no genuine issues of material fact to exist and properly granted Citizens's motion for summary judgment.

The final issue raised involves the counsel fees incurred by Citizens and to be paid by Holliston in accordance with section 11.7 of the loan agreement. We find this provision to be a valid obligation owed pursuant to sections 10 and 11.7 of the agreement, allowing Citizens to receive from Holliston amounts it expended in an effort to retain its rightfully owed prepayment premium in defending this lawsuit. We therefore remand this case to the Superior Court for a determination of the counsel fees expended by Citizens in order to defend this suit by Holliston.

For the reasons stated, Holliston's appeal is denied and dismissed. The decision of the Superior Court granting summary judgment for Citizens is affirmed, and the papers of this case are remanded to the Superior Court.

WEISBERGER, J., did not participate.