[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court for decision is the application of Fleet Bank (Fleet) for the imposition of "Prepayment Penalties" and the objection thereto filed by plaintiffs herein.
 Facts
The record before this Court discloses that on or about January 17, 1996, the defendant in this receivership matter borrowed two separate sums from Fleet. Each loan, one in the amount of $60,000 and the second in the amount of $300,000, was evidenced by a separate promissory note. Only the $300,000 note here is in question and that question goes to the enforceability of and, thus, the inclusion of as part of Fleet's secured claim of a prepayment premium as set forth in paragraph 3 of the $300,000 note (which is set forth in pertinent part in Exhibit "A" attached hereto and made a part hereof).
The record further discloses that (1) the $60,000 note did not contain a comparable provision; (2) interest was set at 8.83% per annum; (3) payments under the note were to be made predicated on a 20-year schedule with a balloon payment provided for at the end of the tenth year, to wit: on January 17, 2006; (4) on January 23, 2003, on petition of the plaintiffs, this Court appointed a Receiver to liquidate defendant, and (5) Feet has filed a secured claim in this proceeding in which it claimed the following sums:
 A. Principal $240,765.98 B. Interest $ 3,070.83 C. Late fees $ 403.50 D. Prepayment premiums $ 21,653.49
The only issue addressed herein is as to the propriety of the prepayment premium.[1] Additional facts of consequence here are that the receivership petition herein constituted a default under the $300,000 note which resulted in an acceleration of the payment date and that the plaintiffs, the petitioners for the appointment of a receiver, are guarantors of defendant's obligations to Fleet.
 Plaintiffs' Contention
Plaintiffs contend that as a matter of law this Court is required to follow the provisions of the Bankruptcy Code ("Code") and that under well-reasoned decisions by Bankruptcy Courts under § 506(b)[2] of the Code provisions for prepayment premiums were really thinly disguised liquidated damage provisions and as applied in cases such as the one at bar, should not be enforced because they are not reasonable.
Plaintiffs build these arguments on the basis of the prepayment here being triggered by an involuntary act — the receivership of defendant — notwithstanding that its own principals were the petitioners-plaintiffs who instituted these proceedings. Further plaintiffs suggest that the premium here really is a penalty which ought not be enforced by this Court and would not be enforced by the Bankruptcy Court. See in re A.J. Lane Co., Inc., 113 B.R. 821 (Mass. Bank. 1990).
 Defendant's Contention
Fleet quarrels with plaintiffs' contention that this Court is bound to apply Bankruptcy Code provisions — particularly 506(b) and further advises this Court that our Supreme Court held inReynolds v. EC Assoc., 693 A.2d 278, 281 (R.I. 1997) only that our Courts look to the Bankruptcy Code and to Federal Court interpretations thereof for guidance in determining the priorities of claims in receivership proceedings. Fleet further reminds this Court of its decision in Cambio v. G-7Corporation, 1998 R.I. Super. Lexis 12 (Feb. 11, 1998), and that of the United States Bankruptcy Court for the District of Rhode Island in the case of in re Newport Offshore, Ltd.,219 B.R. 341 (Bankr. D.R.I. 1998) both independently holding within days of each other that there was no express or implied preemption of Rhode Island receivership laws by virtue of the enactment of the Code.
Fleet further argues that without the "reasonable" language found in § 506(b) of the Bankruptcy Code even Judge Queenan of the Massachusetts Bankruptcy Court would have been hard pressed to decide A.J. Lane as it was decided on this issue.
 Holding
This Court having the benefit of the countervailing arguments presented in the opposing memoranda holds that under the circumstances here it will enforce (as it believes it must) the agreement of the parties; that is to say nothing has been demonstrated which shows this Court that the prepayment premium was a penalty brought about by an involuntary act beyond the control of the maker of the note.
Here this Court, as did the Rhode Island Supreme Court inHolliston Mills, Inc. v. Citizens Trust Company, 604 A.2d 331, 337 (R.I. 1992) ". . . declines to rewrite documents in the banking industry." Here the Court will not rework the contract agreed to by the parties to benefit the borrower in a manner that it did not negotiate for itself. Here Fleet has articulated sufficient justification to enforce an agreed upon premium so that it is in fact a premium and not a penalty. As the Kansas Supreme Court stated in the case of Overland Park Savings LoanAss'n v. Miller, 243 Kan. 730, 733-734 (1998):
 "A lending institution obtains money from other sources and then in turn loans it out to the ultimate borrowers at interest rates which are higher than the rate being paid by the lending institution. The difference between the two rates, i.e. the bank's and the borrower's is the margin of profit from which the bank pays its operating expenses and makes its profit. When a bank loans a large sum of money or a lengthy period of time, it can protect itself by a prepayment clause because the interest rate it is paying to its lender can be locked in at the rate at which it must pay its sources. Should interest rates fall, the ultimate borrower would naturally refinance at the lower interest rate and prepay its loan to the bank. In that event, the bank would have to loan the money to new borrowers at the current, lower interest rate, but the bank would still be locked into paying its sources at the higher rate. Without such prepayment clauses, banks would be reluctant to make large, long-term loans during periods of high interest rates."
Accordingly, the prepayment premium is allowed as part of Fleet's secured claim. Counsel for plaintiffs, Fleet Bank and the Receiver shall confer with respect to the computation of the amount of such premium and counsel for Fleet is directed to present an appropriate order to be settled upon notice to plaintiffs and to the Receiver.
 EXHIBIT A
"3. Incorporation of Loan Agreement; Prepayment; Etc. . . . If for any reason, including acceleration, collection or foreclosure proceedings, the undersigned shall prepay this Note or any portion hereof during terms hereof, then the undersigned shall, concurrently with the subject prepayment, also be obligated to pay to Bank a prepayment premium in an amount computed based on the difference of (a) Six and 33/100 (6.33%) percent per annum, minus (b) the latest published per annum interest rate (as published prior to the date of prepayment) for the United States Treasury Notes or Bills (Bills on a discounted basis shall be converted to a bonds equivalent) with a maturity date closest to the maturity date hereof, as published weekly in the Federal Reserve Statistical Release. If such difference is zero or a negative percentage, there shall be no prepayment premium. If the result is a positive percentage, then such percentage shall be multiplied by the amount of principal being prepaid. The resulting amount will be divided by 360 and multiplied by the actual number of days remaining prior to the maturity date hereof. Said amount shall be reduced to present value, calculated by using the actual number of days remaining prior to the maturity date hereof and using the above-referenced United States Treasury Note or Bill rate and the number of days remaining in the term hereof. The resulting amount shall be the prepayment premium due to the Lender in respect to the principal being repaid. The part of any prepayment that represents payment of outstanding principal shall be applied to the installments hereinabove specified in the inverse order of their maturity. No prepayment shall postpone or waive any required payment of interest or principal under the Note. ($300,000 note at 2-3)."
[1] To the extent that the prepayment premium is allowed, plaintiffs have not conceded the accuracy of Fleet's calculation thereof.
[2] Section 506(b) of the Code, (11 U.S.C. § 506 (b)) reads as follows: "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."